IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DE SHAWN DRUMGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No.  14-1135 GMS |
| ) | |
| SGT. WILLIAM KUSCHEL, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' OPENING MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants William Kuschel, Cheryl Vangorder, Daniel Hutchins, Terrell Ingram, Paul Abernathy, David Alston, and Stanley Baynard ("Defendants"), by and through their undersigned counsel, and hereby move this Honorable Court, pursuant to Fed. R. Civ. P. 56(c), for summary judgment on all remaining claims in the above-captioned matter.  In support thereof, the Defendants provide this Opening Memorandum of Points and Authorities and state the following:

**BACKGROUND**

1. This is a § 1983 civil rights action brought by Plaintiff De Shawn Drumgo, Sr. ("Plaintiff") against Defendants William Kuschel, Cheryl Vangorder, Daniel Hutchins, Paul Abernathy, Terrell Ingram, David Alston, and Stanley Baynard[1].  Plaintiff alleges violations of

---

[1]  Defendants note for the record that Defendant Ingram's last name was misspelled throughout the earlier pleadings in the instant case.  The correct spelling is "Ingram" (not "Ingrem") and will be utilized throughout all subsequent pleadings submitted by the Defendants' undersigned counsel.

In addition, Defendants reiterate for the record that Defendant "Austin" is, in fact, "Alston" as Plaintiff has subsequently admitted and will so be referred to throughout all subsequent pleadings submitted by Defendants' undersigned counsel.  Said counsel apologizes in advance for any confusion regarding the current spelling of these Defendants' surnames.  Executed copies of affidavits from Defendants Abernathy, Alston, and Hutchins will be submitted upon receipt by counsel.

the First, Eighth and Fourteenth Amendments to the United Constitution as will be more fully set forth later herein.

2. Plaintiff is a convicted, incarcerated inmate, currently serving his sentence within the James T. Vaughn Correctional Center ("JTVCC"), a Delaware Department of Correction ("DDOC") facility located in Smyrna, Delaware.

3. The Defendants are William Kuschel, Cheryl Vangorder, Daniel Hutchins, Terrell Ingram, Paul Abernathy, David Alston, and Stanley Baynard ("Defendants"). With the exception of Defendant Alston (who is currently assigned to Baylor Women's Correctional Institution or "BWCI"), the other remaining Defendants are all DDOC employees/officers assigned to the JTVCC facility.

4. Plaintiff alleges that on or about May 29, 2014, upon exiting the chow hall he was deliberately directed by Defendant Vangorder to Defendant Kuschel for the routine pat and frisk search as required of all inmates upon leaving the chow hall prior to returning to their respective tiers where their cells are located. The primary purpose of this search is to prevent the smuggling or transfer of contraband by the inmates to either their cells or other inmates. The search serves the dual purposes of maintaining the safety and security of both the inmate population and staff alike as well as possibly uncovering both non-dangerous (i.e., food, utensils, etc.) and potentially dangerous contraband (i.e., shanks, drugs, etc.).

5. Plaintiff further alleges that Defendant Kuschel subsequently conducted the routine pat and frisk search in an inappropriate sexual manner that allegedly included groping Plaintiff's legs until Defendant Kuschel reached Plaintiff's genitalia. At this point, Plaintiff alleges that Defendant Kuschel grabbed and held Plaintiff's penis to the extent that it allegedly resulted in the skin of the penis rupturing. (D.I. 3)

6. At or about this same time, Plaintiff alleges that several of the other named Defendants who were present (Vangorder, Hutchins, Ingram, and Abernathy) just laughed and failed to intervene in any fashion. Plaintiff also contends that Defendant Vangorder failed to prepare an incident report.

7. Plaintiff further alleges that he contemporaneously filed a sick call slip in order to seek medical treatment for his allegedly injured genitalia and later filed a sick call slip for mental health assistance due to alleged nightmares and sleeplessness resulting from the alleged incident.

8. Additionally, Plaintiff contends that this was the second such incident involving Defendant Kuschel, with Plaintiff having allegedly filed an earlier grievance stating that during a similar search, Defendant Kuschel had purportedly caressed Plaintiff's nipples and buttocks.

9. Besides alleging that Defendants Vangorder, Hutchins, Abernathy, and Ingram idly stood by, failing to intervene on Plaintiff's behalf while laughing during the alleged incident, Plaintiff contends that these same four Defendants knew of Defendant Kuschel's "illicit sexual searches." Plaintiff further alleges that three of these same Defendants (Vangorder, Hutchins, and Ingram) also confided in or stated to Plaintiff after the alleged incident of their personal knowledge of Defendant Kuschel's similar wrongful actions as to other inmates as well.

10. Subsequent to Defendant Kuschel's alleged sexual assault and the alleged corresponding failure to intervene/protect by Defendants Vangorder, Hutchins, Abernathy, and Ingram, Plaintiff was interviewed by Defendant Stanley Baynard ("Defendant Baynard"), an institutional investigator with the Internal Affairs unit at JTVCC and who was assigned to investigate the merits of the alleged sexual assault in compliance with DDOC's Prison Rape Elimination Act ("PREA") procedure. At or about this same time, Plaintiff was transferred to Maximum Housing Unit ("MHU") 21. Plaintiff alleges that the transfer was ordered by

Defendant Baynard in retaliation for either filing the grievance/complaint against Defendant Kuschel or, in the alternative, for having previously filed a lawsuit naming, *inter alia*, Defendant Baynard as a party therein.

11.     Following Plaintiff's transfer to MHU 21 sometime after the alleged May 29, 2014 incident, Plaintiff alleges that the electrical service for his new housing location was defective/inoperative.  He further alleges that when he inquired of Defendant Alston as to the lack of electrical service and requested that said Defendant "turn it back on", Defendant Alston allegedly refused, saying that it was "retaliation" for Plaintiff's allegations and grievance lodged against Defendant Kuschel.

12.     On or about September 5, 2014, Plaintiff filed a Complaint in this Honorable Court, alleging several Constitutional violations of his civil rights pursuant to 42 U.S.C. § 1983. Contemporaneously, Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* together with a Trust Fund Account Statement.  (D.I. 1-3 inclusive).  Plaintiff's Motion for Leave to Proceed was granted on September 11, 2014 (D.I. 4).

13.     On November 24, 2015, following the required screening of Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, this Honorable Court dismissed several Defendants and permitted Plaintiff to proceed with a sexual assault/harassment claim against Defendant Kuschel; a failure to protect or intervene claim against Defendants Vangorder, Hutchins, Ingram, and Abernathy; and retaliation claims against Defendants Baynard and Alston.  (D.I. 9 and 10).

14.     Subsequent thereto, the appropriate Waivers of Service pursuant to the existing Memorandum of Understanding between this Honorable Court and the Delaware Department of Justice ("DDOJ") were executed and filed on behalf of Defendants Kuschel, Baynard,

Vangorder, Ingram, Hutchins, and Abernathy between January 5, 2015 and January 15, 2015. (D.I. 11, 12, 14-17 inclusive, respectively).

15. On February 9, 2015, the undersigned counsel moved for an enlargement of time within which to file a response to the Complaint on behalf of all named Defendants with the except of Alston (erroneously named "Austin" in the Complaint) who had not yet been served or correctly identified by Plaintiff. (D.I. 19). After the Motion was granted (D.I. 20), an Answer was filed on March 4, 2015 on behalf of all Defendants except Alston. (D.I. 23).

16. On May 15, 2015, Defendant Alston was served and an Answer was filed on his behalf on May 27, 2015. (D.I. 28 and 30 respectively). Two days later, this Honorable Court issued a Scheduling Order requiring, *inter alia*, that discovery was to be completed by November 30, 2015. (D.I. 31).

17. The parties exchanged discovery requests with Plaintiff filing only a Request for Production on May 21, 2015 (D.I. 29) and Defendants responding with objections noted on June 23, 2015. (D.I. 34). On October 27, 2015, Defendants' counsel filed a Motion for Leave to Depose Plaintiff (D.I. 36) which was granted by this Honorable Court on November 3, 2015. (D.I. 38).

18. At or about the same time, Defendants served Plaintiff with their First Set of Interrogatories. (D.I. 37). However, Plaintiff's purported Response on December 3, 2015 to said discovery request was non-compliant with the requirements of Fed. R. Civ. P. 33. (D.I. 41).

19. On November 30, 2015, Defendants' counsel deposed Plaintiff at JTVCC. (D.I. 39).

20. Pursuant to the Court's previously announced Scheduling Order (D.I. 31), Defendants hereby respectfully submit their Motion for Summary Judgment and accompanying Memorandum of Points and Authorities in support of said Motion.

## STANDARD OF REVIEW

21. Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact is one that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(c). The burden on the movant may be satisfied by demonstrating an absence of evidence to support the case of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Indeed, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Once the moving party meets this burden, the nonmoving party may not rest upon the allegations or denials of its pleadings, but must, by affidavits or otherwise, set forth specific facts that indicate a genuine material issue for trial. Fed. R. Civ. P. 56(e). Summary Judgment should be granted if the court finds in consideration of all of the evidence that no reasonable trier of fact could find for the nonmoving party. *Matsushita Elec. Indus.*, 475 U.S. at 587.

The Supreme Court has held that 'allegations of the pro se complaint… (are held) to less stringent standards than formal pleadings drafted by lawyers,' and that it must appear 'beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.' *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594 (1972). Accord, *Gray v. Creamer*, 465 F.2d 179, 181-182 (3d Cir. 1972).

## DISCUSSION

### I. Plaintiff's Claims Against All Defendants Are Barred By The Eleventh Amendment And Sovereign Immunity.

22. Defendants collectively and initially move for Summary Judgment on the grounds that Plaintiff's remaining claims under the First, Eighth and Fourteenth Amendments are barred by the Eleventh Amendment to the Constitution of the United States and the immunity it affords the several Defendants.

The initial basis for granting Defendants' Motion for Summary Judgment revolves about immunity afforded them under the Eleventh Amendment. More specifically, the Defendants are immune from liability under the Eleventh Amendment in their official capacities. The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). The United States Congress can waive the states' sovereign immunity, and therefore, their Eleventh Amendment immunity through the Fourteenth Amendment. However, only a clear indication of Congress's intent to waive the states' immunity will produce this result.

23. A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, State Defendants in their official capacities are not "persons" for the purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, this Court lacks the jurisdiction over the Defendants in their official capacities, and they are state officials outside the class of persons subject to liability under §1983. See also *Kentucky v. Graham*, 473 U.S. 159, 167

(1985); *Lapides v. Bd. Of Regents of the Univ. Sys. Of Georgia*, 535 U.S. 613, 617 (2002); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

## A. <u>Eighth Amendment Claim</u>

24. In asserting an Eighth Amendment claim, Plaintiff bears the initial burden of establishing that the action of which he complains constitutes punishment that rises to a cruel and unusual level that reasonable civilized standards would find abhorrent and impermissible. However, as in *Whitley v. Albers*, 475 U.S. 312 (1986), the United States Supreme Court indicated that there is no single objective standard by which to determine what constitutes "cruel and unusual punishment" (<u>i.e.</u>, a frisk search allegedly constituting a sexual assault or harassment) within the prison context. Indeed the Supreme Court, in *Hudson v. McMillan*, 503 U.S. 1 (1992), provided an extensive review of the applicable standard to be considered in Eighth Amendment cases, ranging from the appropriate degree of force to be applied, to alleged deliberate indifference to inmates' serious need for adequate and timely medical care, or even to conditions of confinement which arguably entail being subjected to regular frisk searches such as made the basis of Plaintiff's Eighth Amendment claim. Though Plaintiff contends the frisk search escalated to the level of what he calls sexual assault or harassment, the undersigned respectfully submits that this analysis and rationale are applicable.

25. In <u>Hudson</u>, the Court noted that in *Wilson v. Seiter*, 501 U.S. 294 (1991), there was discussion of the "objective component" of Eighth Amendment analysis. In that case, there was an extension of the "deliberate indifference" standard applied in Eighth Amendment medical care cases to those relating to conditions of confinement as seemingly the thrust of Plaintiff's allegation against Defendant Kuschel. As the Court noted, it took this particular step because it believed that the subjective component of an Eighth Amendment claim can (and presumably

should) be distinguished from the objective facet of the same claim in determining the validity of such a claim.  As it stated in *Hudson*, (citing to *Wilson*, supra.), "… courts considering a prisoner's claim must ask both if the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id*. at 298.

      26.    The Court went on to say in *Hudson* that:

> "[w]ith respect to the objective component of an Eighth Amendment violation, *Wilson* announced no new rule.  Instead, that decision suggested a relationship between the requirements applicable to different types of Eighth Amendment claims.  What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue, for two reasons.  First, "[t]he general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should … be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Whitley*, supra, 475 U.S., at 320.  Second, the Eighth Amendment's prohibition of cruel and unusual punishments " 'draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society,'" and so admits of few absolute limitations.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion))."

*Hudson* at 999-1000.  As a result, the Court concluded that the objective component of the Eighth Amendment claim analysis is 'contextual' in nature and should be considered in light of what is called "contemporary standards of decency."

      27.    Given the above, the undersigned respectfully submits that Plaintiff's Eighth Amendment claim falls short of the well-established case law indicating what might conceivably be considered or constitute "cruel and unusual punishment" under the Eighth Amendment.  To begin with, the frisk search made the basis of Plaintiff's lawsuit (and specifically his Eighth Amendment claim) was a routine function to be endured by the inmate population as it exited the

various chow halls in the facility.  The legitimate penological purpose advanced by performing such a search was first and foremost to preserve the security of the facility and just as importantly, the safety and well-being of both staff and inmates alike.  If improperly performed (or in a cursory, ineffective manner), contraband could easily pass into the facility and to other inmates.  With that purpose in mind, not to mention Plaintiff's own disciplinary problems within the facility from time to time, it is unquestioned that the frisk search was not punishment of any sort, let alone cruel and/or unusual.

28. Where Plaintiff apparently believes a line should be drawn (and with which the Defendants agree) is the manner in which the frisk search is to be conducted.  In the case at bar, Plaintiff does not deny the legitimacy of such a search but alleges that Defendant Kuschel went above and beyond permissible levels, thus allegedly transforming the frisk search to a means of self-gratification, allegedly resulting in physical and possibly mental harm to Plaintiff.  The undersigned vehemently denies that the evidence in the record supports such an allegation.

29. The Court need look no further than to the Affidavits submitted by Defendant Kuschel (Exhibit A) as well as those of his fellow officers implicated as "bystanders" who allegedly failed to intervene or otherwise come to Plaintiff's aid.  As is clearly shown by Defendant Kuschel's Affidavit, the frisk search he conducted on the date in question was performed no differently than in the manner in which he had been trained at the academy and that he had performed countless times since then over more than a decade of service as a correctional officer.  Indeed, as stated in his Affidavit, the exact same search procedure had also been performed on fellow staff members as well as the general public with nary a complaint nor whimper throughout his career.  Nor has he ever been disciplined or reprimanded in any fashion for conducting a thorough search consistent with DDOC practice and policy.

30. The undersigned notes in passing that additional factual support for Defendant Kuschel and the appropriate manner in which he conducted the search may also be found in the Affidavits of his Co-Defendants who were alleged to have failed to intervene or protect Plaintiff. See Affidavits of Defendants Vangorder, Hutchins, Ingram, and Abernathy attached hereto as Exhibits B-E respectively.

31. Still further factual support may be found in the Affidavit of Michael Little, a non-party to this action. As set forth in that affidavit (Exhibit H), Mr. Little avers under oath that there is no evidence of any grievance filed by Plaintiff against Defendant Kuschel, either prior to or at the time of what Plaintiff has characterized as a second incident of sexual assault or harassment. Though Plaintiff repeatedly asserted such claims to the contrary in both his Complaint and during the course of his deposition testimony under oath, Mr. Little found no evidence of any purported grievances in the Delaware Automated Computer System ("DACS") database. As such, the undersigned is at a loss to explain a document Plaintiff has placed in the record, purporting to be "an emergency grievance" filed at or about the time of the alleged incident. Indeed, Plaintiff's own deposition testimony indicates he is unaware of its status. In fact, he has never produced a copy of the first alleged grievance despite a formal discovery request to produce same as well as Plaintiff's as yet unfulfilled promise to do so. Further, Plaintiff actually placed two different copies of the purported May 29, 2014 grievance in the record, leaving one to ponder why they differ. The undersigned suggests that both are fabrications in a misguided effort by Plaintiff to lend credence to his Eighth Amendment claim. Despite his efforts, neither version was ever submitted to or filed with JTVCC, thus reinforcing Mr. Little's findings set forth in his affidavit.

32.     In fact, the missing first grievance (not to mention the disparity in the two versions of the purported second belatedly offered by Plaintiff) and their ultimate disposition constitute yet another ground for granting summary judgment to Defendants that the undersigned will explore later.

### B.  First and Fourteenth Amendment Claims

33.     Further, it is submitted that the same Eleventh Amendment immunity that shields Defendant Kuschel should also apply to the remaining Defendants and the claims lodged against them.  In addition to the applicable law set forth above, the undersigned directs this Honorable Court's attention to the Affidavits of Co-Defendants Vangorder, Hutchins, Ingram, Abernathy, Baynard, and Alston (Exhibits B-G respectively).  Plaintiff himself offers no affidavits from others who purportedly suffered from the same experience.  Thus, the record fails to support the ill-defined First and Fourteenth Amendment claims raised by Plaintiff, to the extent that Eleventh Amendment immunity bars said claims.  Even more telling are the affidavits of the other inmates allegedly observing the situation.  Those inmates admit they were being searched themselves by the very same (and only other) guards Plaintiff asserts were unoccupied.  Thus, summary judgment based upon Eleventh Amendment immunity as more fully set forth above is warranted for Co-Defendants Vangorder, Hutchins, Ingram, and Abernathy.

34.     The same result as to the retaliation claims against Defendants Baynard and Alston should occur based upon the record presented, including their affidavits.

### II.    Plaintiff's Claims Against All Defendants Are Also Barred By The Doctrine of Qualified Immunity.

35.     In addition to Eleventh Amendment immunity and Sovereign Immunity derived therefrom, Defendants respectfully submit that under the existing facts on record, Plaintiff's

claims are all barred by the doctrine of Qualified Immunity, thereby warranting summary judgment in their favor.

36.     The doctrine of qualified immunity protects government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 222, at 223, 231; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies and protects a government official from trial regardless of whether the official makes "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 223, 231 (internal quotation and citation omitted). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* For that reason, the United States Supreme Court has "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (*citing Hunger v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)).

37.     For Plaintiff to overcome the qualified immunity afforded to Defendants, he must establish two elements: (i) that the Defendants' actions violated a constitutional right; and (ii) that the constitutional right in question was "clearly established" at the time of the violation in light of the specific factual circumstances of the particular case. *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 230-31 (2009)). The key issue for purposes of qualified immunity is whether the Defendant's actions were "objectively reasonable in light of the facts and circumstances confronting [them]." *Holman v. Walls*, 1989 WL 66636, at *9 (D. Del. June 13, 1989) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "The qualified immunity standard 'gives ample room for mistaken judgments by

protecting all but the plainly incompetent or those *who knowingly violate the law*.'" *Gilles v. Davis*, 427 F.3d 197, 204 (3d Cir. 2005) (emphasis added) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

38. In the case at bar, the record clearly indicates that all Defendants were acting in their official capacities and within the confines of their official duties at all times material thereto. But moreso, the record does not indicate that any of them, at any time, violated clearly established statutory or constitutional rights of Plaintiff as they being reasonable persons should have known.

39. In support thereof, this Court's attention is again directed to the affidavits of each Defendant in which they specifically describe what they were doing during the course of the alleged incident involving Plaintiff and Defendant Kuschel. Those actions were certainly "objectively reasonable" for them given the facts and circumstances at that time.

40. The same can be said of Defendants Baynard and Alston. In the former's case, he conducted the required PREA investigation but did not initiate or involve himself at all in the later transfer of Plaintiff to a different housing unit.

41. Nor were Alston's actions unreasonable or unresponsive to Plaintiff's requests. The best he could do was to offer to submit a work order for repairs. Again, reference to inmate Howard Blanchfield's affidavit as offered by Plaintiff and establishing that the electrical malfunction pre-dated Plaintiff's housing reassignment/arrival serves to reinforce rather than refute the reasonableness of Alston's actions.

42. Absent Plaintiff's ability to provide factual support to overcome the doctrine of qualified immunity, his claims against all Defendants are unsustainable and Defendants' motion for summary judgment should be granted.

### III. Plaintiff's Failure To Exhaust His Administrative Remedies Prior To Filing Suit Warrants Summary Judgment In Favor Of All Defendants.

43. Defendants have yet another ground upon which their Motion for Summary Judgment rests. More specifically, reference is made to Plaintiff's failure to exhaust his available administrative remedies prior to initiating any litigation.

44. As this Court is well aware, such a mandate/requirement is specifically set forth in the Prison Litigation Reform Act ("PLRA") at 42 U.S.C. § 1997e(a). This directive was reinforced in *Smith v. Vidonish*, 210 Fed. Appx. 152 (3rd Cir. 2006) in which the Third Circuit affirmed the District Court's grant of summary judgment on the Defendants' behalf. Though, not factually on all fours with the instant matter, *Smith* has many similarities. The appellant, proceeding *pro se*, alleged, *inter alia*, Eighth Amendment violations (albeit based on inadequate medical care); retaliation (i.e., placed in administrative custody allegedly for filing a prior lawsuit and other complaints about prison conditions); harassment in the form of repeated cell searches; and his grievances and medical complaints were allegedly improperly handled. The lower Court subsequently granted a defense motion for summary judgment citing, *inter alia*, to the prisoner's failure to comply with the PLRA by first exhausting his available administrative remedies.

45. In affirming the grant of summary judgment, the Third Circuit noted the appellant's failure to comply with the PLRA as to his non-medical Eighth Amendment claims. As the Third Circuit stated:

> "Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. 42 U.S.C. § 1997e(a); *Sprull v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004). In *Spruill*, we held that the PLRA required "proper" exhaustion, meaning that the inmate must follow the procedural requirements of the prison grievance system. *Spruill*, 372 F.3d at 228, 231. If the prisoner fails to follow the procedural requirements, then his claims are procedurally defaulted."

*Smith*, 210 Fed. Appx. at 155.  (A courtesy copy of this decision is attached hereto as Exhibit I).

46. In the case at bar, Defendants reiterate the fact that despite using due diligence, they were unable to locate or determine the existence of either grievance allegedly filed by Plaintiff for either the first alleged incident or the latter made the core subject of this litigation. (See Exhibit H).  Nor can Plaintiff aid his own cause in this regard as shown by his deposition testimony.  Indeed, *assuming arguendo* that such grievances do exist and were duly filed as required under DDOC's BOP 4.4 and JTVCC's SOP 4.4, copies of which are attached hereto as Exhibit J (collectively), Plaintiff readily admitted in his deposition testimony that he never pursued the alleged first grievance because of Plaintiff's transfer to a different housing location. Even so (and Defendants do not admit that such a situation occurred), compliance with the PLRA never occurred.  Nor did it occur with the alleged second grievance, two versions of which Plaintiff has already docketed with the Court but not with JTVCC as alleged.

47. Even more telling as to Plaintiff's non-compliance with the PLRA is the fact that Plaintiff is a self-proclaimed "King of Grievance" as asserted during his deposition.  This boast is certainly reinforced by affiant Michael Little's location of more than 150 grievances filed by Plaintiff over the spun of several months, including the relevant time period associated with this Complaint.

48. Accordingly, Plaintiff cannot assert ignorance of the grievance system and its multiple levels of appeal.  Nor is it possible for him to even hint at the possibility of being unaware of the PLRA or its requirements.  Indeed, the Court's attention is respectfully directed to Plaintiff's Complaint and in particular, Section VI thereof in which the litigant is asked if an administrative procedure is available and whether or not he utilized it to completion prior to initiating the current lawsuit.  In all three instances, Plaintiff answered in the affirmative.  Yet

16

based on the foregoing and the Michael Little affidavit, the Defendants submit that Plaintiff is not being truthful in this instance.

49. Further proof of Plaintiff's less than forthright statements as to his two alleged grievances is found in his ability (indeed, refusal) to respond to Defendants' discovery requests to provide a copy of the initial grievance. Even his promise to do so by filing same with the Court is left unfulfilled and that is due solely, in the Defendants' opinion, to the fact that it doesn't exist or ever did.

50. One additional point warrants but brief mention as to the grievances and the errata sheet docketed by Plaintiff following his deposition. Though advised he could not change the substance of his testimony, Plaintiff nevertheless attempted to do so. This is particularly true in reference to questions regarding the existence and disposition of Plaintiff's grievances related to Defendant Kuschel's frisk searches. Further, the other Defendants note for the record that despite Plaintiff's claims to the contrary, there is no tangible evidence in the record to support the alleged First or Fourteenth Amendment violations by any of the other six Defendants. Being the self-proclaimed "King of Grievances," it is incomprehensible that <u>not even one</u> grievance was filed as to the alleged retaliatory actions of Defendants Baynard and Alston let alone the alleged failure to protect/intervene claims asserted against the other Defendants.

51. Accordingly, Defendants respectfully submit that summary judgment as to Plaintiff's three remaining claims against the seven remaining Defendants should be granted.

### IV. Plaintiff's Has Failed To Establish A Claim Upon Which Relief May Be Granted Pursuant To Fed. R. Civ. P. 12(b)(6)

52. Finally, Defendants submit that the record fails to reflect the establishment of a claim upon which this Honorable Court can grant relief to Plaintiff pursuant to Fed. R. Civ. P. 12(b)(6), further reinforcing Defendants' Motion for Summary Judgment.

53.     Despite being afforded the opportunity to conduct discovery, Plaintiff opted to file but one Request for Production (D.I. 29) to which Defendants' timely responded (D.I. 34). The record is devoid of any additional tangible evidence to support Plaintiff's unsubstantiated claims with the exception of two self-described "Exhibits" filed by Plaintiff (D.I. 40 and D.I. 43), the latter of which appears unrelated to the case at bar.

54.     To begin with, there are no credible grievances of record to support any of Plaintiff's claims.  On the contrary, the evidence presented tends to disprove their existence.

55.     Secondly, Plaintiff has failed to produce any tangible proof that he suffered any physical injury as a result of Defendant Kuschel's frisk search aside from the unsubstantiated claims in his Complaint and the questionable grievance forms attached thereto. Rather, Defendants found no "sick call" slip or evidence of an examination or treatment for Plaintiff's alleged injuries prior to a medical grievance dated June 29, 2014, <u>one month</u> after the alleged incident. (See Exhibit K).  In fact, that grievance only references the nightmares that Plaintiff alleges he suffers from, resulting in sleepless nights.  Even if this condition is conceded to exist (which Defendants do not), Plaintiff admitted at his deposition that he does not take the medication prescribed for it.

56.     Furthermore, there is no evidence of a medical diagnosis rendered by an expert in Plaintiff's medical or mental health records substantiating these claims by Plaintiff.

57.     Plaintiff's only attempt to refute his self-defeating deposition testimony is to file an errata sheet (D.I. 44) which seeks to change the substantive nature of his testimony. Defendants respectfully submit that such an effort is impermissible when taken to the degree asserted by Plaintiff. Fed. R. Civ. P. 30(e) permits corrections even of substance but not to the extent of creating sham issues of fact.  Such was the determination by this very Court in *Donald*

*M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882, a copy of which is attached hereto as Exhibit L.  In favorably ruling on a motion to strike the errata sheet and denying its admission into evidence at a subsequent trial, this Court cited to a Tenth Circuit ruling declaring that "a deposition is not a take home exam."  See *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002) (quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La 1992).  Defendants respectfully submit that the same consideration and effect be given to Plaintiff's errata sheet in the case at bar.

## CONCLUSION

For the reasons set forth above, Defendants, by and through their undersigned counsel, respectfully submit that their Motion for Summary Judgment be granted; judgment entered in their favor as to all claims and against Plaintiff; costs assessed to and against Plaintiff; and that Defendants be granted such further relief as this Honorable Court deems just and proper.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

 */s/ Stuart B. Drowos*
Stuart B. Drowos (I.D. #000427)
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendants

Dated:  January 29, 2016