IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DE SHAWN DRUMGO,                    )
                                   )
              Plaintiff,            )
                                   )
       v.                          )        C.A. No.  14-1135 GMS
                                   )
SGT. WILLIAM KUSCHEL,              )
                                   )
              Defendant.           )

**DEFENDANT'S OPENING MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant William Kuschel ("Defendant"), by and through his

undersigned counsel, and hereby moves this Honorable Court, pursuant to Fed. R. Civ. P. 56(c),

for summary judgment on the remaining claim in the above-captioned matter.  In support thereof,

the Defendant provides this Opening Memorandum of Points and Authorities and all other

pleadings and papers previously submitted in support hereof and states the following:

**BACKGROUND**

1.      This is a § 1983 civil rights action originally brought by Plaintiff De Shawn

Drumgo, Sr. ("Plaintiff") against Defendant William Kuschel and former Defendants Cheryl

Vangorder, Daniel Hutchins, Paul Abernathy, Terrell Ingram, David Alston, and Stanley Baynard[1].

---

[1]  Defendant notes for the record that former Defendant Ingram's last name was misspelled throughout the earlier
pleadings in the instant case.  The correct spelling is "Ingram" (not "Ingrem") and will be utilized throughout this
Memorandum when reference is made to it.

In addition, Defendant reiterates for the record that former Defendant "Austin" is, in fact, "Alston" as Plaintiff has
subsequently admitted and will so be referred to throughout.  Said counsel apologizes in advance for any confusion
regarding the current spelling of these former Defendants' surnames.

Lastly, the undersigned counsel notes that in the Court's original Order granting summary judgment to all
Defendants (D.I. 60) was subsequently appealed (D.I. 63) and the Third Circuit affirmed as to all but Defendant
Kuschel and the matter was remanded to this Honorable Court for further proceedings solely as to the lone remaining
claim against Defendant Kuschel.

Plaintiff alleged violations of the First, Eighth and Fourteenth Amendments to the United States Constitution as to all of the original Defendants. However, only an Eighth Amendment claim against Defendant Kuschel remains in play.

2.      Plaintiff is a convicted, incarcerated inmate who, until recently, had been serving his sentence within the James T. Vaughn Correctional Center ("JTVCC"), a Delaware Department of Correction ("DDOC") facility located in Smyrna, Delaware. However, on information and belief, the undersigned understands that Plaintiff was recently transferred, via the Interstate Compact, to SCI Camp Hill, P.O. Box 200, Camp Hill, Pennsylvania 17001. Plaintiff has been and continues to be proceeding on a *pro se* basis.

3.      The original Defendants were William Kuschel, Cheryl Vangorder, Daniel Hutchins, Terrell Ingram, Paul Abernathy, David Alston, and Stanley Baynard ("Defendants"). With the exception of former Defendant Alston (who is currently assigned to Baylor Women's Correctional Institution or ("BWCI"), the other original Defendants are all DDOC employees/officers assigned to the JTVCC facility.

4.      Plaintiff alleged that on or about May 29, 2014, upon exiting the chow hall he was deliberately directed by former Defendant Vangorder to Defendant Kuschel for the routine pat and frisk search as required of all inmates upon leaving the chow hall prior to returning to their respective tiers where their cells are located. The primary purpose of this search is to prevent the smuggling or transfer of contraband by the inmates to either their cells or other inmates. The search serves the dual purposes of maintaining the safety and security of both the inmate population and staff alike as well as possibly uncovering both non-dangerous (i.e., food, utensils, etc.) and potentially dangerous contraband (i.e., shanks, drugs, etc.).

5.      Plaintiff further alleged that Defendant Kuschel subsequently conducted the routine pat and frisk search in an inappropriate sexual manner that allegedly included groping Plaintiff's legs until Defendant Kuschel reached Plaintiff's genitalia.  At this point, Plaintiff alleged that Defendant Kuschel grabbed and held Plaintiff's penis to the extent that it allegedly resulted in the skin of the penis rupturing. (D.I. 3).

6.      At or about this same time, Plaintiff alleged that several of the other named Defendants who were present (Vangorder, Hutchins, Ingram, and Abernathy) just laughed and failed to intervene in any fashion.  Plaintiff also contended that Defendant Vangorder failed to prepare an incident report.

7.      Plaintiff further alleged that he contemporaneously filed a sick call slip in order to seek medical treatment for his allegedly injured genitalia and later filed a sick call slip for mental health assistance due to alleged nightmares and sleeplessness resulting from the alleged incident.

8.      Additionally, Plaintiff averred that this was the second such incident involving Defendant Kuschel, with Plaintiff having allegedly filed an earlier grievance stating that during a similar search, Defendant Kuschel had purportedly caressed Plaintiff's nipples and buttocks.  The undersigned notes that despite exercising due diligence, neither he nor DDOC staff ever discovered the existence of any proof this second incident ever occurred.

9.      Besides alleging that former Defendants Vangorder, Hutchins, Abernathy, and Ingram idly stood by, failing to intervene on Plaintiff's behalf while laughing during the alleged incident, Plaintiff averred that these same four former Defendants knew of Defendant Kuschel's "illicit sexual searches."   Plaintiff further alleged that three of these same former Defendants (Vangorder, Hutchins and Ingram) also confided in or stated to Plaintiff after the alleged incident

of their personal knowledge of Defendant Kuschel's similar wrongful actions as to other inmates as well.

10.    Subsequent to Defendant Kuschel's alleged sexual assault and the alleged corresponding failure to intervene/protect by former Defendants Vangorder, Hutchins, Abernathy, and Ingram, Plaintiff was interviewed by former Defendant Stanley Baynard ("Defendant Baynard"), an institutional investigator with the Internal Affairs unit at JTVCC and who was assigned to investigate the merits of the alleged sexual assault in compliance with DDOC's Prison Rape Elimination Act ("PREA") procedure.  Because of the nature of the allegations against Defendant in the grievance filed by Plaintiff, the grievance was not handled as a normal grievance but was deemed confidential and sent to Baynard for investigation.  Hence, its existence was unknown and not discovered at the time that Michael Little reviewed all of the grievances filed by Plaintiff for several months prior to and after the alleged May 29, 2014 incident.  This in turn resulted in the error by the undersigned regarding what appeared to be Plaintiff's failure to exhaust as required by the PLRA and upon which this Honorable Court relied when initially granting summary judgment. (D.I. 59, 60).  However, this defense was factually correct as to the other Defendants and therefore subsequently permitted the Third Circuit to properly affirm the dismissal of the other six Defendants and the related § 1983 claims asserted against them by Plaintiff.  Following the Baynard investigation, Plaintiff was transferred to Maximum Housing Unit ("MHU") 21.  Plaintiff alleged that the transfer was ordered by former Defendant Baynard in retaliation for either filing the grievance/complaint against Defendant Kuschel or, in the alternative, for having previously filed a lawsuit naming, *inter alia*, former Defendant Baynard as a party therein.

11.     Following Plaintiff's transfer to MHU 21 sometime after the alleged May 29, 2014 incident, Plaintiff alleged that the electrical service for his new housing location was defective/inoperable.  He further alleged that when he inquired of former Defendant Alston as to the lack of electrical service and requested that said former Defendant "turn it back on", former Defendant Alston allegedly refused, saying that it was "retaliation" for Plaintiff's allegations and grievance lodged against Defendant Kuschel.

12.     On or about September 5, 2014, Plaintiff filed a Complaint in this Honorable Court, alleging several Constitutional violations of his civil rights pursuant to 42 U.S.C. § 1983. Contemporaneously, Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* together with a Trust Fund Account Statement.  (D.I. 1-3 inclusive).  Plaintiff's Motion for Leave to Proceed was granted on September 11, 2014 (D.I. 4).

13.     On November 24, 2015, following the required screening of Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, this Honorable Court dismissed several other Defendants and permitted Plaintiff to proceed with a sexual assault/harassment claim against Defendant Kuschel; a failure to protect or intervene claim against former Defendants Vangorder, Hutchins, Ingram, and Abernathy; and retaliation claims against former Defendants Baynard and Alston.  (D.I. 9 and 10).

14.     Subsequent thereto, the appropriate Waivers of Service pursuant to the existing Memorandum of Understanding between this Honorable Court and the Delaware Department of Justice ("DDOJ") were executed and filed on behalf of then Defendants Kuschel, Baynard, Vangorder, Ingram, Hutchins, and Abernathy between January 5, 2015 and January 15, 2015.  (D.I. 11, 12, 14-17 inclusive, respectively).

15.     On February 9, 2015, the undersigned counsel moved for an enlargement of time within which to file a response to the Complaint on behalf of all named Defendants with the exception of Alston (erroneously named "Austin" in the Complaint) who had not yet been served or correctly identified by Plaintiff.  (D.I. 19).  After the Motion was granted (D.I. 20), an Answer was filed on March 4, 2015 on behalf of all then Defendants except Alston.  (D.I. 23).

16.     On May 15, 2015, former Defendant Alston was served and an Answer was filed on his behalf on May 27, 2015. (D.I. 28 and 30 respectively).  Two days later, this Honorable Court issued a Scheduling Order requiring, *inter alia*, that discovery was to be completed by November 30, 2015. (D.I. 31).

17.     The parties exchanged discovery requests with Plaintiff filing only a Request for Production on May 21, 2015 (D.I. 29) and Defendants responding with objections noted on June 23, 2015. (D.I. 34).  On October 27, 2015, Defendant's counsel filed a Motion for Leave to Depose Plaintiff (D.I. 36) which was granted by this Honorable Court on November 3, 2015. (D.I. 38).

18.     At or about the same time, Defendants served Plaintiff with their First Set of Interrogatories. (D.I. 37).  However, Plaintiff's purported Response on December 3, 2015 to said discovery request was non-compliant with the requirements of Fed. R. Civ. P. 33. (D.I. 41).

19.     On November 30, 2015, Defendant's counsel deposed Plaintiff at JTVCC. (D.I. 39).

20.     Pursuant to the Court's previously announced Scheduling Order (D.I. 31), the then Defendants submitted their Motion for Summary Judgment and accompanying Memorandum of Points and Authorities in support of said Motion. (D.I. 45 and 46 respectively).

21.     On February 19, 2016, Plaintiff filed a Motion for an Extension of Time within which to respond to the Defendants' Motion for Summary Judgment. (D.I. 48).  Three days later, this Honorable Court granted Plaintiff's Motion. (D.I. 50).

22.     On or about the same date, Plaintiff filed what the Court subsequently construed as Plaintiff's Answering Brief in response to the pending defense motion for summary judgment. (D.I. 51).

23.     The undersigned counsel for Defendants filed on February 26, 2016 a corresponding Motion for an Extension of Time within which to file a Reply Brief or Memorandum of Points and Authorities. (D.I. 53).  On March 3, 2016, the Court granted the defense motion and set March 23, 2016 as the due date for any reply. (D.I. 54).  On said date, a Reply Memorandum in support of the Defendants' summary judgment motion was filed. (D.I. 55).

24.     On April 8, 2016, without first obtaining leave to file a Sur-Reply, Plaintiff unilaterally did so. (D.I. 56).  Sometime thereafter, the Court denied Plaintiff's third motion seeking appointment of counsel. (D.I. 52 and 57 respectively).

25.     On July 22, 2016, this Honorable Court issued a Memorandum and accompanying Order granting the Defendants' Motion for Summary Judgment. (D.I. 59 and 60 respectively).  In granting Defendants' Motion, the Court cited to Plaintiff's failure to exhaust his available administrative remedies (i.e., grievance) prior to initiating his lawsuit in violation of the PLRA. In doing so, the Court deferred consideration of the other defenses asserted by Defendants.  On August 3, 2016, Plaintiff filed a Motion for Reconsideration (D.I. 62).  On the same date, he also filed a Notice of Appeal to the Third Circuit. (D.I. 63).  Six days later, the Third Circuit issued an Order staying consideration of the appeal pending disposition of Plaintiff's motion for reconsideration. (D.I. 65).  On August 15, 2016, the undersigned counsel filed a response to

Plaintiff's motion for reconsideration. (D.I. 66).  Eight days later, this Court denied Plaintiff's

motion, clearing the way for the Third Circuit to consider and rule upon the pending appeal.

26.     Following the submission of Plaintiff's opening pleading, Defendants filed an

Answer, acknowledging that they had belatedly discovered that Plaintiff had indeed filed a timely

grievance only as to Defendant Kuschel.  However, as noted above, the undersigned counsel was

wholly unaware of the fact because due to the nature of Plaintiff's grievance, it was routed to a

confidential queue, leading to an investigation by JTVCC's Internal Affairs unit that ultimately

concluded Defendant Kuschel's alleged actions did not constitute a sexual assault as otherwise

alleged by Plaintiff.  Upon discovery of this error for the first time following Plaintiff's appeal, the

undersigned so advised the Third Circuit.  Notwithstanding the error as to the grievance against

Defendant Kuschel, the record was devoid of any evidence that any type of grievance was ever

filed by Plaintiff as to the other six Defendants.

27.     Accordingly, the Third Circuit, on March 27, 2017, accepted defense counsel's

explanation and based on the record before it, affirmed this Honorable Court's earlier ruling in

part and denied same as to Defendant Kuschel alone, vacating that part of the decision and

remanding the matter for further proceedings.

28.     Following the issuance of that decision (a copy of which is attached hereto as

Exhibit I) the case was in fact remanded.  Following Plaintiff's fourth Motion for Appointment of

Counsel and Defendant Kuschel's response (D.I. 70 and 72 respectively), the Court issued a

Memorandum and Order on May 18, 2017 which, *inter alia*, denied Plaintiff's Motion for

appointment of counsel and established a new Scheduling Order. (D.I. 78, 79).  The latter

established a new deadline by which to complete discovery (if any) and for the filing of summary

judgment motions.  The deadline for submission of motions for summary judgment was set for September 19, 2017.

29.     Due to several factors, including but not limited to the press of other litigation, the undersigned filed a Motion for an Enlargement of Time within which to file a renewed Motional for Summary Judgment. (D.I. 94) which is still pending as the Court awaits a possible response by Plaintiff.

30.     In accordance with the revised Scheduling Order, Defendant Kuschel, by and through his undersigned counsel, hereby submits his renewed Motion for Summary Judgment and accompanying Memorandum of Points and Authorities in support thereof.

## STANDARD OF REVIEW

31.     "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the moving party has carried its burden, the non-movant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

32.     Put another way, a fact is considered to be material if it "could affect the outcome" of a case and a genuine dispute as to same is shown "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party". *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Once the moving party has met its initial burden, the non-moving party "may not rest upon mere allegations or denials of [the] pleadings".  Instead, said party, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." See *Matsushita Elec. Indus. Co.* at 586 n1.

33.     Further, at summary judgment, courts must refrain from weighing the evidence or making credibility determinations, *Anderson* at 255, and are required to "view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor," *Gonzales v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012).  Nonetheless, the non-moving party must offer more than a "mere 'scintilla of evidence'" to create a genuine issue of material fact, *Ramara, Inc. v. Westfield Ins. Co.,* 814 F.3d 660, 666 (3d Cir. 2016) (quoting *Anderson*, 477 U.S. at 252), and conclusory affidavits are insufficient to survive summary judgment.  See *MD Mall Assocs.,, LLC v. CSX Transp., Inc.*, 715 F.3d 479, 485 n.6 (3d Cir. 2013) ("Summary judgment is proper only where the pleadings, discovery, and <u>non-conclusory affidavits</u> show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."). (emphasis supplied).

**DISCUSSION**

A. **PLAINTIFF'S EIGHTH AMENDMENT CLAIM IS BARRED BY THE ELEVENTH AMENDMENT AND THE DOCTRINE OF SOVEREIGN IMMUNITY.**

34.    Plaintiff's sole remaining claim is based upon a purported Eighth Amendment violation committed by Defendant.  More specifically, Plaintiff alleges that Defendant's standard and required pat and frisk search of Plaintiff following Plaintiff's exit from the chew hall was conducted in a manner that constituted cruel and unusual punishment.  Notwithstanding Plaintiff's claim, Defendant respectfully submits that Plaintiff's specious claim is barred by the doctrine of sovereign immunity as set forth in the Eleventh Amendment to the United States Constitution as well as the Delaware State Constitution and well-established and long-standing case law.

35.    The Eleventh Amendment of the United States Constitution protects an un-consenting state or state agency from a suit brought in federal court by one of its own citizens.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Elderman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Ali v. Howard*, 353 F. App'x 667, 672 (3d Cir. 2009).  Therefore, "when a plaintiff sues a state official alleging a violation of federal law, the Federal Court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102-03.  Though admittedly the United States Congress may abrogate the state's Eleventh Amendment immunity through the Fourteenth Amendment, only a clear indication of Congress' intent to waive such immunity will produce this result.  *Seminole Tribe of Fla.*, 517 U.S. 44.  No such clear intent is

found in 42 U.S.C. § 1983.  In fact, Defendant respectfully submits that Congress' intent appears to be to the contrary as the statute facially allows suits only to be brought against "persons".  See 42 U.S.C. § 1983.

36.     A suit against state officials in their official capacities is treated as a suit against the State.  *Hafer v. Melo*, 502 U.S. 21 (1991).  Under federal law, State Defendants in their official capacities are not "persons" for the purposes of 42 U.S.C. § 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Consequently, this Court lacks the jurisdiction over the Defendants in their official capacities, and they are state officials outside the class of persons subject to liability under § 1983.

37.     Moreover, Defendant cites to the Delaware State Constitution as a further indication that the doctrine of Sovereign Immunity acts to bar Plaintiff's claim.  See *Del. Const. Art. I, Sect. 9; Doe v. Cates*, 499 A.2d 1175 (Del. 1983).  The doctrine is an absolute bar to liability for monetary damages absent a waiver of said immunity by an act of the Delaware General Assembly.  *Wilmington Housing Authority v. Williamson*, 228 A.2d 782, 786 (Del. 1967).  In determining whether sovereign immunity would bar an action under Delaware law, a Plaintiff must show that (1) the State has waived the defense of sovereign immunity for the actions mentioned in the Complaint; and, arguably, (2) the State Tort Claims Act does not bar the action.  *Pauley v. Reinhoehl*, 848 A.2d 569, 573 (Del. 2004).  The defense of sovereign immunity can only be waived by an act of the General Assembly that expressly manifests an intention to do so.  The General Assembly has waived the defense of sovereign immunity only as to those risks specifically covered by the State Insurance Coverage Program.  18 <u>Del. C.</u> §6511.  A purported § 1983 action such as the instant case is not one of the specifically covered risks nor is there any evidence that such an action is specifically exempted from the doctrine's effect.  Nor has Plaintiff adducted evidence

establishing that Defendant was acting in his individual rather than official capacity.  Because the Plaintiff has failed to even allege a waiver of immunity in his claim against the Defendant as a State official, Plaintiff's claim should fail.  Accordingly, both the Eleventh Amendment and the doctrine of sovereign immunity as enunciated in the Delaware State Constitution bar  § 1983 claims for monetary damages against a state, state agencies or, as in the case at bar, a state official such as Defendant acting in his official capacity.

### B.   PLAINTIFF'S CLAIM AGAINST DEFENDANT IN HIS INDIVIDUAL CAPACITY IS BARRED BY THE DOCTRINE OF QUALIFIED  IMMUNITY.

38.     The prior discussion as to the immunity afforded Defendant by both the Eleventh Amendment and Sovereign Immunity doctrine relate to his alleged actions performed in his official capacity.  Plaintiff has never indicated the pending matter was brought against Defendant in his individual capacity and Defendant objects to any belated attempt by Plaintiff to do so at this point in time.  However, for the sake of completeness and to avoid a potential assertion that such a defense is considered waived, Defendant respectfully submits that he is also entitled to qualified immunity which would also bar Plaintiff's pending § 1983 action.

39.     The doctrine of qualified immunity protects government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 222, at 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity applies and protects a government official from trial regardless of whether the official makes "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Pearson*, 555 U.S. at 223, 231 (internal quotation and citation omitted).  "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial.'"  *Id.*  For that reason, the United States Supreme Court

has "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (*citing Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)).

40.     For Plaintiff to overcome the qualified immunity defense afforded to Defendant, he must establish two elements:  (i) that the Defendant's actions violated a constitutional right [or statutory right]; and (ii) that the constitutional [or statutory] right in question was "clearly established" at the time of the violation in light of the specific factual circumstances of the particular case. *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 230-31 (2009).  See also *Mammaro v. New Jersey Division of Child Protection and Permanency*, 814 F.3d 164 (3d Cir. 2016) (quoting *Pearson*). The key issue for purposes of qualified immunity is whether the Defendant's actions were "objectively reasonable in light of the facts and circumstances confronting [him]."  *Holman v. Walls*, 1989 WL 66636, at *9 (D. Del. June 13, 1989) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  "The qualified immunity standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those *who knowingly violate the law*.'"  *Gilles v. Davis*, 427 F.3d 197, 204 (3d Cir. 2005) (emphasis added) (quoting *Hunter v.  Bryant*, 502 U.S. 224, 229 (1991)).

41.     The manner in which the alleged violated right is defined (narrowly or broadly) determines the doctrine's applicability.  Relatively recent case law (*Barkes v. Frist Correctional Med., Inc.*, 766 F.3d 307 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015) and its progeny have suggested that the Plaintiff must narrowly define the right at issue and also point to a Supreme Court case clearly on point or show a "robust consensus of persuasive authority" in support of that right.  The absence of either of these elements will permit qualified immunity to shield the Defendant from liability for damages.

14

42.     Defendant respectfully directs this Honorable Court's attention to a recently announced decision by the Third Circuit which further reinforces the above-described manner in which qualified immunity will apply and that, *inter alia*, the Plaintiff must articulate with specificity the alleged clearly established right of which a Defendant is accused of violating.  See *Kenneth Mann, et al. v. Palmerton Area School District, et al.*, C.A. No. 16-2821 (September 21, 2017).  Though factually distinguishable, the decision clearly and unequivocally sets forth the basis for affirming the District Court's decision granting summary judgment as to the individual Defendant on the basis of qualified immunity.  For the Court's convenience, a copy of the decision is attached hereto as Exhibit IV.  In particular, this Court's attention is respectfully directed to pp. 8-9 thereof where the applicable standards as previously described are reiterated by the Third Circuit.

43.     Moreover, a viable condition of confinement claim based on the Eighth Amendment such as alleged acts purportedly constituting "cruel and unusual punishment" that seemingly meets the threshold set forth above must be so reprehensible as to be deemed inhumane under "contemporary standards of decency" or such that it deprives an inmate of "the minimal civilized measure of life's necessities."  *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Moreover, when an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation [or conduct] alleged must be, "objectively, sufficiently serious"; and (2) the prison official must have shown "deliberate indifference" to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Under the first prong of the *Farmer* test, the Plaintiff must demonstrate that he suffered a "sufficiently serious" constitutional deprivation.  *Id.*  Prison officials must ensure that "inmates receive adequate food, clothing, shelter and medical care, and must take 'reasonable measures to

15

guarantee the safety of the inmates.'" *Farmer* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984).  Furthermore, prison conditions "must not involve the wanton and unnecessary infliction of pain …" *Rhoades v. Chapman*, 452 U.S. 337, 347 (1981).

44.     Under the second prong of the *Farmer* test, the prison official must have acted with "deliberate indifference" to the inmate's health or safety.  *Farmer*, 511 U.S. at 837.  Deliberate indifference is a subjective standard based on "what the prison official actually knew." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001).  Under this test, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  An Eighth Amendment claimant, however, "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

45.     In light of the above, Defendant respectfully submits that the record and evidence adduced by Plaintiff fail to support Plaintiff's Eighth Amendment claim and, more particularly, do not refute the applicability of the qualified immunity doctrine afforded Defendant. Despite Plaintiff's self-styled "facts", there is absolutely no credible evidence set forth in the record to establish that Defendant performed the pat and frisk search in any wrongful manner or that it violated Plaintiff's Eight Amendment right against cruel and unusual punishment.  For the sake of judicial economy and to avoid unnecessary duplication of Defendant's argument regarding the Eighth Amendment claim, the Court's attention is respectfully directed to Defendant's previous Opening Memorandum. (D.I. 46 at pp. 8-11 inclusive).

46.     Additionally, the record fails to reflect any harm that actually occurred to Plaintiff as a result of the alleged May 29, 2014 incident.  Reference is made to the applicable medical

16

records originally attached to Defendant's first Motion for Summary Judgment (D.I. 46-1, Exhibit K at pp. 57-59).  Moreover, Defendant cites Dr. Marc Richman's recently executed Declaration (attached hereto as Exhibit III) that clearly and unequivocally refutes the notion that Plaintiff has had any mental health issues directly attributable to or arising from the alleged May 29, 2014 incident.  Plaintiff has failed to produce anything aside from a late June, 2014 medical grievance or sick call slip that asserts sleeping difficulties and despite promises to do so, has never produced any documentation to corroborate his claim of physical injuries which, at worst, would be *de minimus* in nature.

47.     Given the above Defendant respectfully submits that Plaintiff has failed to establish the first prong of the *Farmer* test.  More specifically, Plaintiff has not shown a "sufficiently serious" deprivation or violation of a clearly established Constitutional right (i.e., ensuring Plaintiff's safety or causing any physical harm) based on the record as it exists.  There is simply no credible evidence put forth by Plaintiff, aside from his own unsubstantiated claims.

48.     In the absence of the first *Farmer* prong, it is quite clear that the second prong is also missing.  That is, the prison official must have acted (or failed to act) with "deliberate indifference" to the inmate's health or safety.  *Farmer*, 511 U.S. at 837.  Deliberate indifference is a subjective standard based on what the Defendant actually knew.  *Beers-Capitol v. Whetzel*, 256 F.3d at 131.  Simply put, the Defendant must be shown to be aware of facts that there is a serious risk of harm to the Plaintiff/Claimant and that the Defendant draws that inference from the facts before him.

49.     In the instant case, no such facts were found by the Defendant to substantiate the Plaintiff's claim of a wrongful pat and frisk search that somehow might be construed as "cruel and

unusual punishment".  As a result, no such inference could be (or in fact was) drawn by Defendant to cease his routine search notwithstanding Plaintiff's unfounded protestations to the contrary.

50.    Based on the foregoing, Defendant respectfully submits that Plaintiff's claim is barred by the doctrine of qualified immunity and, as result,  Defendant is entitled to summary judgment as a matter of law.

**C.   PLAINTIFF'S CLAIM IS ALSO BARRED BY THE STATE
       TORT CLAIMS ACT.**

51.    As a corollary to the doctrines of sovereign and qualified immunity, Defendant respectfully submits that the Delaware State Tort Claims Act, ("the Act"), found at 10 Del. C. §4001, also provides immunity.  To negate the existence of such immunity, the Plaintiff must adduce evidence sufficient to show that one of three elements is missing:  (1) the act or failure to act in accordance with one's official duties; (2) the act or omission was done in good faith and in the belief that the public interest was being served thereby; and (3) the act or omissions complained of was done without gross or wanton negligence.  The burden falls upon the Plaintiff to establish that at least one of these elements is absent before the defense fails.

52.    In the instant matter, Defendant performed the routine pat and frisk search in the same exact manner in which he had been trained and had performed it thousands of times before over the course of his fifteen (15) year career with DDOC.  As shown by his earlier Affidavit (D.I. 46-1, Exhibit A) as well as his Declaration (Exhibit II attached hereto), there was no deviation in the manner or nature of his search on May 29, 2014.  Further substantiation for the propriety of the alleged wrongful search may be found in the previously filed Affidavits of former Defendants Vangorder, Hutchin, Ingram, and Abernathy (D.I. 46-1, Exhibits B-E inclusive at pp. 7-18) as well as the previously noted medical records and grievance indicating Plaintiff had not sought medical

treatment for his alleged injuries until late June, 2014 (<u>one moth later</u>).  Nor was there any evidence

found (or ever produced by Plaintiff) to corroborate his alleged injuries or treatment for same.

     53.     Given Plaintiff's lack of evidence (aside from his bald, uncorroborated assertions),

Defendant respectfully submits that all three elements set forth in the Act exist and warrant the

applicability of immunity afforded Defendant therein.  In turn, Defendant is entitled to summary

judgment as a matter of law.

### D.   PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM UPON WHICH RELIEF MAY BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6).

     54.     Finally, Defendant submits that the record fails to reflect the establishment of a

claim upon which this Honorable Court can grant relief to Plaintiff pursuant to Fed. R. Civ. P.

12(b)(6), further reinforcing Defendant's Motion for Summary Judgment.

     55.     Despite being afforded the opportunity to conduct discovery, Plaintiff opted to file

but two Requests for Production (D.I. 29 and 91) to which Defendant timely responded (D.I. 34

and 93).  The record is devoid of any additional tangible evidence to support Plaintiff's

unsubstantiated claim with the exception of two self-described "Exhibits" filed by Plaintiff (D.I.

40 and D.I. 43), the latter of which appears unrelated to the case at bar.

     56.     To begin with, there is only one credible medical grievance of record offered in

support of Plaintiff's claim and that was filed by Plaintiff one month after the alleged incident.

     57.     Secondly, Plaintiff has failed to produce any tangible proof that he suffered any

physical injury as a result of Defendant Kuschel's pat and frisk search aside from the

unsubstantiated claims in his Complaint and the questionable grievance forms attached thereto.

Rather, Defendant found no "sick call" slip or evidence of an examination or treatment for

Plaintiff's alleged injuries prior to a medical grievance dated June 29, 2014, <u>one month</u> after the

alleged incident. (See D.I. 46-1 Exhibit K).  In fact, that grievance only references the nightmares

that Plaintiff alleges he suffers from, allegedly resulting in sleepless nights.  Even if this condition is conceded to exist (which Defendant does not), Plaintiff admitted at his deposition that he does not take the medication prescribed for it.  See also Dr. Marc Richman's Declaration attached hereto as Exhibit III.

58.     Furthermore, there is no credible evidence of a medical diagnosis rendered by an expert in Plaintiff's medical or mental health records substantiating these claims by Plaintiff, including a self-diagnosed PTSD condition.   Reference is again made to Dr. Richman's Declaration. (Exhibit III).

59.     Plaintiff's only attempt to refute his self-defeating deposition testimony is to file an errata sheet (D.I. 44) which seeks to change the substantive nature and content of his testimony. Defendant respectfully submits that such an effort is impermissible when taken to the degree asserted by Plaintiff.  Fed. R. Civ. P. 30(e) permits corrections even of substance but not to the extent of creating sham issues of fact.  Such was the determination by this very Court in *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882, a copy of which was attached to Defendant's first dispositive Motion (D.I. 46-1, Exhibit L at pp. 60-68).  In favorably ruling on a motion to strike the errata sheet and denying its admission into evidence at a subsequent trial, this Court cited to a Tenth Circuit ruling declaring that "a deposition is not a take home exam." See *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002) (quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La 1992).  Defendant respectfully submits that the same consideration and effect be given to Plaintiff's errata sheet in the case at bar.

## CONCLUSION

For the reasons set forth above, Defendant, by and through his undersigned counsel, respectfully requests that his Motion for Summary Judgment be granted.

20

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Stuart B. Drowos*
Stuart B. Drowos (I.D. #000427)
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendant

Dated:  September 27, 2017