IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DESHAWN DRUMGO,<br><br>        Plaintiff,<br><br>        v.<br><br>SGT. WILLIAM KUSCHEL,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 14-1135-CFC<br>)<br>)<br>)<br>)<br>) |

DeShawn Drumgo, SCI Frackville, Frackville, Pennsylvania. Pro Se Plaintiff.

Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

March 25, 2019
Wilmington, Delaware

CONNOLLY, U.S. District Judge

I.  INTRODUCTION

Plaintiff DeShawn Drumgo ("Plaintiff"), a former inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, currently housed at SCI Frackville, Frackville, Pennsylvania, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 3) Defendant Sgt. William Kuschel ("Defendant") moves for summary judgment.[2] (D.I. 96) Plaintiff opposes the motion. Also before the Court is Defendant's motion to supplement/correct the record[3] and Plaintiff's request for counsel. (D.I. 132, 143)

II.  BACKGROUND

The verified Complaint[4] alleges sexual harassment/assault occurred on May 29, 2014. (D.I. 3 at 4-5) Plaintiff was walking out of MHU 24-B chow hall, and C/O

---

[1] When bringing a § 1983 claim, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] All other defendants have either been dismissed or granted summary judgment. (*See* D.I. 10, 60)

[3] Defendant filed the motion in response to an inmate affidavit submitted by Plaintiff Defendant contends the affidavit "is a fiction at best and a total lie at worst." (D.I. 132 at 6) The Court will grant the motion but notes that while the Court "requires more than conclusory affidavits to create a genuine issue of material fact, *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 485 n.6 (3d Cir. 2013), when deciding a motion for summary judgment, 'the evidence of the non-movant is to be believed,' and credibility determinations must be left to the jury." *Pearson v. Prison Health Serv.*, 850 F.3d 526 n.5 (3d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[4] When the Complaint is verified, the Court treats specific, factual allegations in the Complaint that are based on personal knowledge as if they were made in an affidavit or declaration. *See Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) ("Because [statements in verified complaint and other court filings] were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to

1

VanGorder ("VanGorder") pointed him towards Defendant who was wearing a black leather glove. (D.I. 3 at 4-5; D.I. 46-1 at 20) According to VanGorder, Plaintiff was directed to Defendant because he was the next available officer to conduct a frisk search as Plaintiff exited the chow hall. (D.I. 46-1 at 8-9) Plaintiff states that before the frisk started Defendant told Plaintiff "not to say anything because no one was going to help [him]". (D.I. 40 at 17) Plaintiff states that Defendant "repeatedly and slowly in attempts to seduce [Plaintiff] . . . groped [Plaintiff's] legs three different times until he reached [Plaintiff's] penis. (*Id.*) Plaintiff states that after he told Defendant he would let one of the other officers "strip search him versus [allowing Defendant] to sexually assault[]" him, Defendant "went on up [Plaintiff's] penis stroking it, jacking it, and yanking it in a masterbative or what he thought to be a seductive manner." (*Id.*) Plaintiff states that Defendant continued to grip his penis and squeezed it intentionally in such a manner that Plaintiff could feel the cracking and burning of the skin and this resulted in rupturing the skin of the penis. (D.I. 3 at 5-6) During this time Plaintiff shouted, "let go of my dick." (*Id.* at 5) Plaintiff alleges that VanGorder, C/O Hutchins ("Hutchins"), C/O Ingram ("Ingram"), and C/O Abernathy ("Abernathy") were present during the incident. (D.I. 3 at 5)

---

statements in an affidavit."); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit in opposition to a motion for summary judgment); *Boomer v. Lewis*, 2009 WL 2900778, at *14 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge."), aff'd, 541 F. App'x 186, 193 (3d Cir. 2013). Plaintiff's affidavit contains many of the same factual allegations as those in the verified Complaint. (*See* D.I. 40 at 17-20)

Defendant uses leather gloves when he conducts frisk searches for safety reasons. (D.I. 97-1 at ¶ 12) He denies that he sexually assaulted Plaintiff or that he grabbed, squeezed, or held onto Plaintiff's penis when he frisked Plaintiff. (*Id.* at ¶¶ 6, 8) Defendant has no recollection of Plaintiff yelling or calling for staff members to provide Plaintiff assistance or to provide Plaintiff protection when he frisk searched Plaintiff on May 29, 2014. (*Id.* at ¶ 11) VanGorder, Hutchins, Ingram, and Abernathy deny that Plaintiff called for help from the other staff members. (D.I. 46-1 at 9, 11, 14, 17) Defendant states that he frisk-searched several inmates on the same date and in the same manner as he used with Plaintiff and no other inmate complained about the search or said he sexually assaulted them. (D.I. 97-1 ¶ 6)

The affidavit of inmate Isaiah J. Walker ("Walker") states that on the day in question he saw Defendant clutching Plaintiff's groin area and heard Plaintiff yell, "let go of my dick." (*Id.* at 19) The affidavit of inmate Curtis Mercer ("Mercer") states that on the day in question he saw Defendant search Plaintiff in a "different manner by going up and down [Plaintiff's] leg, lingering around where one's private area is located" and "had what looked like a handful of Plaintiff's genitals" which made Plaintiff holler, "let go of my dick." (*Id.* at 20) The affidavit of inmate Alex Lopez ("Lopez") states that he was frisked by Defendant in a similar manner on the same day and that he also heard Plaintiff yell. (D.I. 124)

Plaintiff alleges this is the second time Defendant has sexually assaulted him. (D.I. 3 at 5; D.I. 98 at 2) Plaintiff does not indicate when the first incident occurred, but

states he submitted a grievance after Defendant caressed his nipples and buttocks.[5] (D.I. 40 at 18) Defendant denies that Plaintiff made a prior complaint or submitted a grievance complaining of his frisk search procedure. (D.I. 97-1 at ¶ 7) Defendant states that Plaintiff's complaint is the only time he has been accused by anyone of improperly performing a frisk search or deviating from the normal manner of performing a search. (Id. at ¶ 5) In addition, Defendant denies that he was called to the offices of Wallace or Lt. Schaffer to discuss complaints by inmates as to the manner in which he conducts a frisk search. (Id. at ¶ 8) Defendant states that he has never been disciplined in any manner either in reference to such complaints or other alleged misconduct or unprofessional behavior or performance of his duties. (Id.)

Defendant's responsibilities include security checks and inspections, primarily as frisk searches on all personnel entering the facility. (Id. at ¶ 3) The security check frisk searches are performed using the same procedure Defendant was trained to employ at the Delaware Department of Correction academy. (Id. at ¶ 4) Defendant also employs the same procedure for inmate searches within the facility. (Id.) The purpose of searching inmates as they leave the chow hall and observing and supervising inmates in the chow hall is to ensure that no institutional rules are violated, to prevent contraband from being passed from one inmate to another, and to maintain the security and safety of the chow hall for the sake of staff and inmates alike. (Id. at ¶ 11) The procedure Defendant was trained in is designed to quickly, efficiently, and effectively detect and intercept contraband. (Id.)

---

[5] Neither party produced a copy of this grievance.

According to Plaintiff, following the incident, he spoke to VanGorder, who told him that she and the staff were aware of Defendant's illicit "sexual searches." (D.I. 3 at 6) VanGorder denies this allegation. (D.I. 46-1 at 8) Hutchins and Abernathy also deny Plaintiff's allegations that they had knowledge that Defendant tended to commit unlawful acts while conducting searches. (D.I. 46-1 at 11, 17) Plaintiff alleges that he spoke to Ingram who told him that Lt. Wallace ("Wallace") had warned Defendant about his inappropriate conduct. (D.I. 3 at 6) Ingram denies this allegation. (D.I. 46-1 at 14-15) In addition, Plaintiff alleges he spoke to the C/O Levin ("Levin") who referred to Defendant's conduct as "illicit sexual searches." (D.I. 3 at 6)

Plaintiff approached Wallace, who was with Defendant, and reported to him that he was sexually assaulted. (D.I. 3 at 6) Stanley Baynard ("Baynard") an internal affairs investigator at the VCC, was assigned to conduct a Prison Rape Elimination Act investigation of Plaintiff's complaint against Defendant. (D.I. 46-1 at 20) Baynard concluded that there was no credible evidence to substantiate the claim and recommended closure of the matter without the need for further action against Defendant. (*Id.* at 21)

During his deposition, Plaintiff testified that the incident resulted in flashbacks, nightmares, and an actual injury of broken skin for which he received Bactrocin ointment. (D.I. 51 at 71, 73) He states that he submitted a sick call slip for the injury to his penis. (D.I. 3 at 6) A sick call request dated May 29, 2014, the day of the occurrence, requested a new pair of eyeglasses, and did not mention the May 29, 2014 occurrence or an injury. (D.I. 118 at 71) A sick call slip dated June 1, 2014, sought a

refill of nasal spray and a chronic care appointment for Plaintiff's allergies and asthma, and did not mention the May 29, 2014 occurrence or an injury. (*Id.* at 72) A June 10, 2014 sick call slip asked for medication and again requested a chronic care provider visit. (*Id.* at 70) It did not mention the May 29, 2014 occurrence or an injury. (*Id.*) A September 3, 2014 medical record states that Plaintiff "reported an officer groped his penis when he was in Building 23, denies any injuries at this time." (D.I. 98 at 11) During his deposition, Plaintiff testified that "that's not true" that medical personnel had seen the injury as minor, because Plaintiff was given ointment.[6] (D.I. 51 at 73)

Plaintiff states that he submitted sick call slips for nightmares and sleeplessness that resulted from the incident. (D.I. 3 at 6; D.I. 98 at 3) Plaintiff was seen by mental health personnel on July 1, 2014 following a sick call request submitted the same day concerning the protocol for treating his complaints of nightmares following the alleged sexual assault. (D.I. 131 at 13) Plaintiff submitted a grievance concerning treatment and, on October 10, 2014, it was noted that Plaintiff received monthly mental health visits and that Plaintiff participates in mental health group sessions. (*Id.* at 18) On the same date, the treatment plan was for Plaintiff to "engage with mental health clinicians to address distress and symptoms related to the incident." (*Id.*)

Marc Richman ("Richman"), Bureau Chief for the Bureau of Correctional Health Care Services, reviewed Plaintiff's mental healthcare file and observed that it does not

---

[6] From the excerpts of Plaintiff's deposition it may be inferred that Plaintiff may have been seen by medical shortly after the May 29, 2014 incident and may have been given Bactrocin for his alleged injury, but the record does not contain medical records of the visit or of any treatment provided. (D.I. 51 at 73, 75)

indicate a diagnosis of post-traumatic stress disorder. (D.I. 97-1 at 16-17, 19-21) Nor does it indicate that Plaintiff take medication for any mental health issues, although he partakes in "talk therapy." (*Id.* at 17, 20) Richman opined that Plaintiff's current psychological condition is essentially no different than his condition in March 2016, that Plaintiff's condition is much improved, and that any allegations to the contrary are not reflected in relevant medical or mental health records. (*Id.* at 18)

Defendant is sued in his individual and official capacity. (D.I. 3 at ¶ VII) Plaintiff seeks compensatory and punitive damages as well as injunctive relief in the form of a transfer to a different prison facility.

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or, or alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is

insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Defendant moves for summary judgment on the grounds that: (1) the claim is barred by Eleventh Amendment immunity and sovereign immunity; (2) Defendant is entitled to qualified immunity; (3) the claim is barred by the Delaware Tort Claims Act, 10 Del. C. § 4001, *et seq.*; and (4) the Complaint fails to establish a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). Plaintiff responds that summary judgment is not appropriate because there remain genuine issues of material fact in dispute.

### A. Eleventh Amendment

Defendant seeks summary judgment on the claims raised against him in his official capacity based upon Eleventh Amendment immunity. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself," and Defendant is afforded immunity under the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted).

9

The Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted). Plaintiff seeks injunctive relief in the form of a transfer to a different prison. Given that Plaintiff is no longer housed at the VCC, his request for a transfer is moot.

Accordingly, the Court will grant Defendant's motion for summary judgment based upon his immunity from suit under the Eleventh Amendment on the claims raised against him in his official capacity.

### B.  Sexual Abuse and Qualified Immunity

Last year, the United States Court of Appeals for the Third Circuit joined several other circuits to hold that sexual abuse of prisoners by prison officials can violate the Eighth Amendment. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018). The Third Circuit stated that the "sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment", and "invades the most basic of dignity interests: to be treated as a human being", and is "not part of the penalty that criminal offenders pay for the offenses against society." *Id.* at 473, 474 (quoting *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997)).

The Court clarified that "a single incident, if sufficiently serious or severe, can run afoul of the Eighth Amendment as surely as can multiple, less egregious incidents." *Ricks*, 891 F.3d at 477. The Court declined to adopt a bright-line rule as to when sexual

10

contact will violate the Eighth Amendment and instructed district courts to conduct a "contextual, fact-specific" inquiry, which considers "[t]he scope, place, and timing of the offensive conduct." *Id.* at 478. "[O]bjectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline" and, in context, other sexualized touching may be objectively serious if it violates established prison procedures. *Id.* In addition, it may be appropriate to inquire whether there was a legitimate penological purpose for the search. *Id.* at 477.

The framework for analyzing whether there has been a violation of the Eighth Amendment when a prisoner alleges sexual abuse by a corrections officer is comprised of a two-part analysis that consists of an objective component and a subjective component. The objective component is satisfied only if the incident in question is "objectively, sufficiently intolerable and cruel, capable of causing harm. . . ." *Id.* at 475. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9, (1992). "[T]he Eighth Amendment shields inmates from only those actions 'repugnant to the conscience of mankind'". *Ricks*, 891 F.3d at 475-76 (quoting *Hudson*, 503 U.S. at 10). "The objective element 'is therefore contextual and responsive to 'contemporary standards of decency'". *Ricks*, 891 F.3d at 476 (citations omitted). "And 'conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional'". *Id.* (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The subjective element inquires "whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm'". *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). "Because this is a mental state, 'unless admitted, [it] has to be inferred rather than observed' from conduct such as harassing comments, or an overly invasive search in violation of facility policy." *Ricks*, 891 F.3d at 475 (citations omitted). "The nature of the violative conduct itself will often be enough to demonstrate the prison official's culpable state of mind." *Id.* (citation omitted).

Defendant moves for summary judgment under the doctrine of qualified immunity.[7] Defendant contends that: (1) the record and evidenced adduced by Plaintiff fail to support his claim and do not refute the applicability of the qualified immunity doctrine afforded him; (2) there is no credible evidence that establishes the pat and frisk search was conducted in a wrongful manner or that it violated Plaintiff's Eighth Amendment right against cruel and unusual punishment; and (3) the record does not reflect any harm that actually occurred to Plaintiff as a result of the May 29, 2014 incident.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the

---

[7] Defendant states that Plaintiff never indicated whether this matter was raised against him in his individual capacity. To the contrary, Paragraph VII. Relief states, "seeking to sue each officer in their individual capacity and official capacity for $1,000,000 each." (D.I. 3)

12

challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal citations omitted); *see also Saucier v. Katz*, 533 U.S. 194 (2001). The District Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

Although the question of qualified immunity is generally a question of law, "a genuine issue of material fact will preclude summary judgment on qualified immunity." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009); *see also Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (noting that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."). The Court must deny summary judgment if, on Plaintiff's version of the facts, Defendant violated Plaintiff's clearly established constitutional rights. *See Giles*, 571 F.3d at 327 (finding that district court was wrong to dismiss Eighth Amendment claims on qualified immunity grounds because there was a factual dispute as to whether plaintiff had ceased resisting when he was kicked by officers, and that the court "must accept [the plaintiff's] version of the facts.").

Plaintiff alleges two instances of sexual harassment. The first, described as Defendant caressing Plaintiff's nipples and buttocks; and the second that occurred on May 29, 2014 and that forms the basis of this action. Even construing the facts in the

light most favorable to Plaintiff, the acts complained of do not rise to the level of an Eighth Amendment violation. Plaintiff alleges two discrete incident of conduct which, taken as true are unseemly, but do not involve harm of federal constitutional proportions. *See e.g., Boddie*, 105 F.3d at 861 ("isolated episodes of harassment and touching . . . are despicable and, if true they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.").

There is no record evidence regarding the alleged first incident and Plaintiff's description of it is simply lacking in detail. Regarding the May 29, 2014 incident, the evidence indicates that the search was conducted pursuant to a legitimate penological purpose of observing and supervising inmates in the chow hall to insure that no institutional rules are violated, no contraband is passed from one inmate to another, and to maintain the security and safety of the chow hall for the sake of staff and inmates alike. The evidence indicates that Defendant used a leather glove during the search for safety reasons and there is no evidence he touched Plaintiff's bare skin. In addition, the record reflects the frisk was conducted during a routine frisk search of inmates leaving the chow hall, and it was conducted in the presence of inmates and other correctional officers. There is no evidence that the frisk took an unduly length of time. Even if Defendant exceeded the scope of an ordinary frisk search, the evidence does not support a finding that he did so to arouse or gratify himself. Finally, the evidence of record does not support Plaintiff's claims of injury. Plaintiff states that Defendant injured his penis and he received medical attention for the injury, but there are no medical

records to support this. Plaintiff also claims mental distress, but the medical records do not demonstrate severe or lasting psychological harm.

Having considered the record, pertinent case law, and "the scope, place, and timing of the offensive conduct," *Ricks*, 891 F.3d at 478, the Court concludes that Defendant's actions do not rise to the level of a constitutional violation. Defendant's alleged behavior, while certainly unseemly and unprofessional, was far less egregious than the allegations addressed in many cases in which the actions of prison officials were far more offensive and were found to be insufficient to support a cognizable Eighth Amendment claim. *See, e.g.*, *McIntyre v. Kellinger*, 741 F. App'x 891 (3d Cir. 2018) (holding that incident in which defendant dragged his hands down plaintiff's buttocks, gripped his buttocks, patted his thighs, and "squeezed [his] ass as if [he] was a woman" while whispering "in a sexual manner" during a pat-search was not objectively severe or serious to establish an Eighth Amendment violation); *Ricks*, 891 F.3d at 479 (suggesting that an "isolated, momentary" incident in which guard "rubbed his erect penis against [plaintiff's] buttocks through both men's clothing" was not sufficiently severe, but allowing an opportunity to amend); *Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (no Eighth Amendment violation where correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); *Armstrong v. Diraimo*, 2018 WL 6788524 (W.D. Pa. Dec. 26, 2018) (no Eighth Amendment violation where correctional officer placed his hands inside of plaintiff's boxer shorts, stroked his penis once, and grabbed his scrotum during a random pat search.); *Watson v. Wingard*, 2018 WL 2108316 (W.D. Pa. Jan. 31, 2018) (allegations

that defendant gave plaintiff an "upper cut" to the groin with his forearm, "groped and massaged [his] penis," and examined plaintiff's "butt . . . like a doctor" did not amount to sexual abuse), report and recommendation adopted by 2018 WL 2107773 (W.D. Pa. May 7, 2018).

Nor does Defendant's conduct fall within the examples of misconduct identified in Ricks. See Ricks, 891 F.3d at 478 (defining serious sexual contact to include "sexualized fondling, coerced sexual activity, combinations of going harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline."). Id. Defendant's alleged inappropriate behavior does not in any way trivialize the mistreatment Plaintiff alleges he experienced, but the behavior does not amount to a cognizable constitutional violation.

Accordingly, the Court finds that Plaintiff has failed to establish that he experienced conduct that was "repugnant to the conscience of mankind" or that the alleged violation took place under circumstances that suggest a "culpable state of mind." Ricks, at 475. Because Plaintiff cannot satisfy either element of his Eighth Amendment claim and there is no underlying unconstitutional conduct, Defendant is entitled to qualified immunity. Therefore, Defendant's motion for summary judgment will be granted.

### C. Supplemental State Claims

Summary judgment is appropriate as to Plaintiff's federal claim. Therefore, the Court declines to exercise supplemental jurisdiction to the extent Plaintiff raises a state law claim for sexual assault. See 28 U.S.C. § 1367(c). Because the Court declines to

exercise supplemental jurisdiction over any possible state claims, it will not address Defendant's grounds for summary judgment based upon sovereign immunity and Delaware's State Tort Claims Act, 10 Del. C. § 4001.

## V. CONCLUSION

For the above reasons, the Court will: (1) grant Defendants' motion for summary judgment (D.I. 96);[8] (2) grant Defendant's motion to supplement/correct record (D.I. 132); (3) deny as moot Plaintiff's request for counsel (D.I. 143); and (4) decline to exercise supplemental jurisdiction.

An appropriate Order follows.

---

[8] The Court will not address the Rule 12(b)(6) issue raised by Defendant, as summary judgment is appropriate on other grounds.