## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DE SHAWN DRUMGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-1135 CFC |
| | ) | |
| SGT. WILLIAM KUSCHEL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION TO ALTER OR AMEND JUDGMENT OR, IN THE ALTERNATIVE, <u>MOTION FOR A NEW TRIAL</u>

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Zi-Xiang Shen (#6072)
Kenneth L. Wan (#5667)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Zi-Xiang.Shen@delaware.gov
Kenneth.Wan@delaware.gov
*Attorneys for Defendant*

Date: January 13, 2022

## **<u>TABLE OF CONTENTS</u>**

BACKGROUND ...................................................................................................1

ARGUMENT .......................................................................................................1

I.      LEGAL STANDARD ...............................................................................1

II.     THE COURT ERRED IN ADMITTING THE TESTIMONY OF MARVIN BURROUGHS ...........................................................................2

III.    THE PUNITIVE DAMAGES AWARD SHOULD BE REDUCED OR VACATED ................................................................................................7

       A.    Legal Standards ....................................................................................7

       B.    The Punitive Damages Award is Unconstitutionally Excessive...........8

       C.    The Evidence Does Not Support the Punitive Damages Award.........13

CONCLUSION ...................................................................................................16

## TABLE OF AUTHORITIES

*Agrofresh Inc. v. Essentiv LLC*, 2020 WL 7024867 (D. Del. Nov. 30, 2020) ......7, 8

*Bernard v. East Stroudsburg Univ.*, 700 F. App'x 159 (3d Cir. 2017) ....................4

*Carrington v. Easley*, 2011 WL 2132850 (E.D.N.C. May 25, 2011).....................12

*Cleveland v. Curry*, 2014 WL 690846 (N.D. Cal. Feb. 21, 2014) ...................10, 11

*Collins v. Chandler,* 2009 WL 3595129 (D. Del. Oct. 28, 2009) ..........................12

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) ......................................8

*Day v. Abumohor*, 1992 WL 162958 (D. Del. June 19, 1992)..................................2

*Delucia v. Great Stuff, Inc.*, 2015 WL 5157127 (Del. Super. Ct. Apr. 10, 2015)...10

*Harris v. Paige*, 2011 WL 1755646 (E.D. Pa. May 9, 2011)..................................10

*Harris v. Paige*, 2013 WL 4718949 (E.D. Pa. Sept. 3, 2013) ................................10

*Hernandez v. Theriot*, 2016 WL 4118919 (M.D. La. Aug. 1, 2016), *aff'd*, 709 F. App'x 755 (5th Cir. 2017)...........................................................................11

*Huddleston v. United States*, 485 U.S. 681 (1988)................................................3, 6

*Jester v. Hutt*, 937 F.3d 233 (3d Cir. 2019)..............................................................9

*Johnson v. Elk Lake School Dist.*, 283 F.3d 138 (3d Cir. 2002) ......................3, 4, 6

*Kazan v. Wolinski*, 721 F.2d 911(3d Cir. 1983) ..............................................7, 8, 13

*Lagarde v. Metz*, 2017 WL 457654 (M.D. La. Feb. 2, 2017)..................................12

*Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997)........................................................11

*Max's Seafood Café v. Quinteros*, 176 F.3d 669 (3d Cir. 1999) ..............................2

*McKinley v. Trattles*, 732 F.2d 1320 (7th Cir. 1984) ........................................12, 14

*McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d, 651 (D. Del. 2007) ...................2

*Metzler v. Kurtz*, SSX-L-9-04 (N.J. Super. Ct.) ....................................................10

*Norman v. Elkin*, 849 F. Supp. 2d 418 (D. Del. 2012) ..........................................2

*Oxendine-Bey v. Harihan*, 2015 WL 5331809 (E.D.N.C. July 22, 2015), *report and recommendation adopted*, 2015 WL 5330571 (E.D.N.C. Sept. 14, 2015)..............................................................11

*Parker v. Conway*, No. 07-cv-251 (E.D. Pa. 2008) ................................................12

*Schreffler v. Bd. of Educ. of Delmar School Dist.*, 506 F. Supp. 1300 (D. Del. 1981) ........................................................................................15

*Shepherd v. Fischer*, 2018 WL 3122053 (S.D.N.Y. June 26, 2018).......................12

*Spence v. Bd. of Educ. of Christina School Dist.*, 806 F.2d 1198 (3d Cir. 1986) .7, 8

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)......................7, 9

*Warren v. Cardenas*, No. 3:08-cv-00250, 2011 WL 4435935 (W.D. Pa. 2012).....11

## STATUTES AND OTHER AUTHORITIES

U.S. CONST. AMEND. VII ...........................................................................................8

U.S. CONST. AMEND. XIV...........................................................................................7

Fed. R. Civ. P. 50 ...............................................................................................1, 2, 8

Fed. R. Civ. P. 59 ...................................................................................................2, 8

Fed. R. Evid. 403 ........................................................................................................3

Fed. R. Evid. 413 .....................................................................................................3, 4

Fed. R. Evid. 415 ..................................................................................................3, 5, 7

## BACKGROUND

Plaintiff, an inmate formerly housed at the James T. Vaughn Correctional Center ("JTVCC"), brought a claim under 42. U.S.C. § 1983 against Defendant, a former JTVCC correctional officer, for violation of his Eighth Amendment right against cruel and unusual punishment.  D.I. 191 at 5.  Plaintiff claimed that on May 29, 2014, during a routine frisk search, Defendant grabbed and held onto Plaintiff's genitals, resulting in physical injuries and long-term mental distress.  *Id.*; D.I. 191-1 at 10.

Following a two-day trial on December 13 and 14, 2021, the jury returned a verdict: (1) finding that Plaintiff proved that Defendant had violated Plaintiff's Eighth Amendment right; (2) finding that Plaintiff did not prove that he suffered injuries; (3) awarding nominal damages of $1; and (4) awarding punitive damages of $500,000.  D.I. 211.

The Court deferred consideration of Defendant's motion for a judgment as a matter of law during trial.  Tr. 367:9-11. [1]

## ARGUMENT

### I.   LEGAL STANDARD.

Under Federal Rule of Civil Procedure 50(b), the Court may order, post-trial, entry of judgment as a matter of law in the moving party's favor.  Judgment as a

---

[1] The trial transcript is cited herein as "Tr. __."

1

matter of law is appropriate where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Under Federal Rule of Civil Procedure 59, the Court may alter or amend judgment or grant a new trial on all or some issues. The Court may alter or amend a jury verdict under Rule 59(e) where there is a "need to correct a clear error of law or fact or to prevent a manifest injustice." *Norman v. Elkin*, 849 F. Supp. 2d 418, 421 (D. Del. 2012) (citing *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Alternatively, the Court may order a new trial under Rule 59(a) where "damages are excessive" or "substantial errors were made in the admission or rejection of evidence." *Day v. Abumohor*, 1992 WL 162958, at *1 (D. Del. June 19, 1992). In making that determination, "the court need not view the evidence in the light most favorable to the verdict winner." *McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d, 651, 655 (D. Del. 2007).

## II.  THE COURT ERRED IN ADMITTING THE TESTIMONY OF MARVIN BURROUGHS.

At trial, Plaintiff testified on his own behalf and also relied on the testimony of three inmates who purportedly witnessed the May 29, 2014 incident. In addition, the Court allowed Plaintiff to call as a witness an inmate named Marvin Burroughs ("Burroughs"), not because Plaintiff claimed that Burroughs witnessed the incident, but because Defendant had allegedly assaulted Burroughs as well. Over Defendant's

objection, the Court permitted Burroughs to testify under Federal Rule of Evidence ("FRE") 415.   The Court's ruling was an error of law that resulted in manifest injustice.

Under FRE 415, in a civil case involving a claim that a party committed sexual assault, the Court "may" admit evidence that a party committed another act of sexual assault.   FRE 415(a).   FRE 415 in turn refers to FRE 413, which includes specific definitions for "sexual assault."   FRE 413(d).   FRE 415 does not mandate the admission of such evidence, nor does it "limit the admission or consideration of evidence under any other rule."   FRE 415(c).   Under the limited case law on the rule, the trial court is to weigh the probative value of the proposed evidence under the balancing test of FRE 403, "with a thumb on the scale in favor of admissibility." *Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 155 (3d Cir. 2002).   The trial court is to determine "whether 'a jury could reasonably'" find by a preponderance of evidence that the defendant committed the past act.   *Id.* at 152-53 (quoting *Huddleston v. United States*, 485 U.S. 681, 690 (1988).   But at the same time,

> where the past act is not substantially similar to the act for which the defendant is being tried, and/or where the past act cannot be demonstrated with sufficient specificity, the propensity inference provided by the past act is weaker, and no presumption in favor of admissibility is warranted.

*Id.* at 156.   The effect is that a trial court is to examine the proposed evidence *before* it is introduced in order to determine whether the other allegation is "substantially

similar" to the plaintiff's claim and "demonstrated with sufficient specificity." *See, e.g.*, *id.* at 149-50 (trial court considered deposition testimony); *Bernard v. East Stroudsburg Univ.*, 700 F. App'x 159, 168 (3d Cir. 2017) (trial court's rulings under FRE 415 "involved a close analysis of the three witnesses' descriptions of how they were touched by Sanders and whether those descriptions constituted sexual assault under Rule 413").

Here, the Court ruled, reluctantly, that Burroughs would be permitted to testify that Defendant had sexually assaulted him. Tr. 31:3-5. But unlike in *Elk Lake* or *Bernard*, the Court did not hear Burroughs' testimony prior to trial to determine (1) whether his allegations constituted sexual assault under Rule 413 and (2) whether his allegations were "substantially similar" to Plaintiff's claims. The Court made its ruling before trial proceedings had begun. Although the Delaware Department of Correction had transported Burroughs to the courthouse, the Court did not request a proffer from Burroughs or hear any proposed testimony. Remarking that "I know nothing about this witness" (Tr. 35:9), the Court relied solely on Plaintiff's word as to the substance of Burroughs' testimony and concluded that "I'm not in a position to say a jury could not reasonably find what this person is apparently going to testify to" (Tr. 35:11-12). Thus, the very first time the parties, the Court, and, importantly, *the jury* heard the substance of Burroughs' testimony was when Burroughs testified during trial.

4

As it turned out, Burroughs' testimony differed substantively from Plaintiff's disclosure.   First, Plaintiff disclosed, and the Court understood, that Burroughs would testify that Defendant had assaulted him on one prior occasion.   D.I. 205 at 1 (representing that Burroughs "will testify that during *a* frisk search performed by Defendant, Defendant grabbed and squeezed his groin in the same manner alleged by Plaintiff" (emphasis added)); Tr. 21:1-2 ("a prior incident").   Indeed, Plaintiff's questioning reflected his understanding that Burroughs claimed that Defendant had assaulted him once.   *See, e.g.*, Tr. 225:13-14 ("Was there a time that you think [Defendant] acted inappropriately during a search?"); Tr. 226:9-11 ("So the time that [Defendant] groped your genitals and your buttocks, do you recall approximately when this happened, what year, what time of year?").   Only at that point did Burroughs allege that Defendant had assaulted him *three* times.   Tr. 226-227.   Yet Burroughs did not provide any testimony regarding the alleged second and third incident for the Court to be able to determine that the purported acts were substantially similar to Plaintiff's allegations, as required by FRE 415.

Moreover, contrary to Plaintiff's representation, Burroughs did not testify that Defendant "grabbed and squeezed" his genitals: he testified that Defendant "groped" him.   Tr. at 226:6; 227:10.   Burroughs did not elaborate on what he meant by "grope," but at no point did he testify that Defendant "grabbed and squeezed" his genitals.   As the trial evidence established, Department of Correction policy requires

correctional officers to search an inmate's groin area, and officers' hands may incidentally brush against a male inmate's genitals. JTX 14; Tr. 248:3-16. Thus, Burroughs could have interpreted an incidental touch during a proper search to be an inappropriate "grope"—but there was no finding that Burroughs' allegations constituted sexual assault under FRE 413, nor did Plaintiff establish that Burroughs' alleged experience was "substantially similar" to Plaintiff's allegations that Defendant grabbed and squeezed his penis so hard that the skin ruptured.

But at that point, jury had already heard Burroughs' testimony; the bell could not be unrung. As a result, the jury heard that Defendant had committed at least five wrongful acts towards inmates,[2] three of those against Burroughs. The cumulative effect was to portray Defendant as a serial sexual abuser, underscoring why courts must take a cautious approach in allowing propensity evidence. As the Third Circuit observed in *Elk Lake*:

> While uncharged conduct is admissible under Rule 415, some limits, of course, need to be placed on its admissibility in order to ensure that the plaintiff may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo."

283 F.3d at 152 (quoting *Huddleston*, 485 U.S. at 689). The resulting prejudice to Defendant is manifest from the jury's verdict. Even though the jury ultimately found

---

[2] In a pre-trial ruling, the Court allowed Plaintiff to testify that Defendant had assaulted him prior to May 29, 2014, which Plaintiff did. Tr. 114:23-116:1.

that Plaintiff had not proven he suffered any physical or mental injuries from the alleged May 29, 2014 incident, it nevertheless awarded an exorbitant punitive damages sum. The Court's error of law in admitting Burroughs' testimony without making predicate findings as required by FRE 415 prejudiced Defendant, with Burroughs' testimony certainly contributing to the jury's finding of liability and award of punitive damages. Accordingly, the Court should alter or amend the judgment or, alternatively, order a new trial.

## III. THE PUNITIVE DAMAGES AWARD SHOULD BE REDUCED OR VACATED.

### A. Legal Standards.

In the event the Court does not order a new trial, the Court must also reduce or vacate the jury's award of punitive damages against Defendant. An excessive punitive damages award violates the Fourteenth Amendment's due process clause "prohibit[ing] the imposition of grossly excessive or arbitrary punishments on a tortfeasor," thereby requiring the Court to reduce or vacate the award as a matter of law. *Agrofresh Inc. v. Essentiv LLC*, 2020 WL 7024867, at *19 (D. Del. Nov. 30, 2020) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)). Furthermore, the Court can remit a damages award it finds is unsupported by the evidence or is excessive. *Spence v. Bd. of Educ. of Christina School Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986); *see also Kazan v. Wolinski*, 721 F.2d 911, 914

(3d Cir. 1983) (finding trial court did not abuse discretion by ordering remittitur "where the verdict is so large as to shock the conscience of the court").[3]

The Third Circuit has drawn a distinction between verdicts that are reduced based on constitutional concerns and remittiturs of verdicts as unsupported by the evidence, in that "[t]he remedies available to a court when reducing a jury award based upon due process concerns are not necessarily the same as those available when a court exercises its discretion because it believes the amount of the award is inconsistent with the evidence in a case." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 716 (3d Cir. 2010). Because the latter type of remittitur is "conditional," "the court must offer a new trial as an alternative to a reduction in the award in order to avoid depriving the plaintiff of his/her Seventh Amendment right to a jury trial." *Id.* But where the reduction of an award is based on avoiding a denial of due process, the same Seventh Amendment concerns do not arise and the court reduces the award as a matter of law without offering the plaintiff a new trial. *Id.*

### B.   The Punitive Damages Award is Unconstitutionally Excessive.

In determining whether the amount of a punitive damages award is unconstitutionally excessive, courts typically consider three "guideposts": "(1) the

---

[3] Constitutional challenges to excessive punitive damages awards proceed under Federal Rule of Civil Procedure 50(b), while remittitur of a punitive damages award proceeds under Rule 59. *See Agrofresh*, 2020 WL 7024867, at *19.

degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418.   Under that analysis, courts primarily look to a mathematic ratio between compensatory damages and punitive damages. *Jester v. Hutt*, 937 F.3d 233, 242 (3d Cir. 2019).   However, where, as here, the jury awards only nominal damages, the Court's analysis focuses on the reasonableness of the punitive damages award. *Id.* at 243 (explaining that the Supreme Court's "guideposts suggest that the touchstone for constitutional scrutiny of punitive damages awards is reasonableness").   In making that assessment, the Court looks to comparisons with similar cases in which punitive damages were awarded. *Id.*

Here, the jury found that Plaintiff failed to prove that he suffered *any* physical or mental injuries as a result of Defendant's conduct.   Yet at the same time, the jury awarded $500,000 in punitive damages against Defendant.[4]   A comparison of the punitive damages award in this case against other recent state and federal cases in this Circuit involving sexual assault, particularly by defendants in positions of

---

[4] The jury did not respond to question 4 of the verdict form, "Did William Kuschel act maliciously or wantonly in violation of DeShawn Drumgo's Eighth Amendment rights?"  D.I. 211.

authority and power, demonstrates that the punitive damages award is unreasonable. For example, in *Delucia v. Great Stuff, Inc.*, 2015 WL 5157127 (Del. Super. Ct. Apr. 10, 2015), a jury found that over the course of a year, a teenage plaintiff's adult employers had repeatedly plied him with alcohol and drugs and engaged in sexual activity with him, awarding compensatory and punitive damages for the sexual assaults. Post-trial, the court reduced the punitive damages to $80,000 against each defendant. *Id.* at *4. In *Harris v. Paige*, the plaintiff claimed that during a traffic stop, a police officer forced him to drive to a secluded area and then forced him to perform sexual acts and attempted to rape him. An internal investigation sustained the plaintiff's claims. 2011 WL 1755646, at *1 (E.D. Pa. May 9, 2011). At trial, a jury found liability and awarded $65,000 in compensatory damages and $100,000 in punitive damages. 2013 WL 4718949, at *1 (E.D. Pa. Sept. 3, 2013). And in *Metzler v. Kurtz*, SSX-L-9-04 (N.J. Super. Ct.), a jury found that an oral surgeon had sexually assaulted multiple patients while they were under anesthesia, awarding compensatory damages of $275,000 and punitive damages of only $100. 2009 WL 531108; Ex. A.

Outside this Circuit, in a case involving factually similar claims, a correctional officer was found liable for squeezing and grabbing multiple inmates' genitals during clothed-body searches. *Cleveland v. Curry*, 2014 WL 690846, at *1 (N.D. Cal. Feb. 21, 2014). A jury awarded between $2,000 and $10,000 in compensatory

damages to the inmates and $5,000 in punitive damages to each inmate.  *Id.*  In *Oxendine-Bey v. Harihan*, the court found $5,000 in compensatory damages and $5,000 in punitive damages appropriate where a prison medical provider sexually fondled an inmate multiple times during medical examinations. 2015 WL 5331809, at *8 (E.D.N.C. July 22, 2015), *report and recommendation adopted*, 2015 WL 5330571 (E.D.N.C. Sept. 14, 2015).  Likewise, a court awarded a plaintiff $15,000 in compensatory damages and $35,000 in punitive damages when plaintiff, who was intoxicated, was taken by a police officer and forced to perform sexual acts. *Hernandez v. Theriot*, 2016 WL 4118919, at *8 (M.D. La. Aug. 1, 2016), *aff'd*, 709 F. App'x 755 (5th Cir. 2017).  And in *Mathie v. Fries*, the Second Circuit determined that a $500,000 punitive damages award was excessive where a correctional officer was found liable for repeatedly assaulting and raping a detainee, reducing the award to $250,000 to be in line with the compensatory damages awarded.  121 F.3d 808, 816 (2d Cir. 1997).

An examination of punitive damages awards in cases in this Circuit involving excessive force by correctional officers dictates the same result.  For example, in *Warren v. Cardenas*, No. 3:08-cv-00250 (W.D. Pa. 2012), an inmate claimed that a correctional officer had used excessive force in removing him from his cell, resulting in emotional distress and physical injuries that included a broken finger.  2011 WL 4435935.  The jury awarded $50,000 in compensatory damages and $75,000 in

11

punitive damages.  Ex. B.  In *Collins v. Chandler*, a jury found that a correctional officer had used excessive force against an inmate by capstunning and tackling him while enforcing a rule against talking in the chow hall, awarding $5,000 in compensatory damages and $35,000 in punitive damages.  2009 WL 3595129, at *1 (D. Del. Oct. 28, 2009).  In *Parker v. Conway*, No. 07-cv-251 (E.D. Pa. 2008), a jury awarded $12,500 in compensatory damages and $5,000 in punitive damages on an inmate's claim that a correctional officer had assaulted him, resulting in injuries to his hand and face.  Ex. C.

Finally, because of the dearth of precedent within this Circuit, the Court should consider case authorities outside the Circuit awarding punitive damages and only nominal damages against correctional officers found to have sexually abused inmates.  Those cases further demonstrate that the punitive damages awarded here are excessive.  *See, e.g.*, *Shepherd v. Fischer*, 2018 WL 3122053, at *7 (S.D.N.Y. June 26, 2018) ($20,000 total in punitive damages against two defendants); *Lagarde v. Metz*, 2017 WL 457654, at *6 (M.D. La. Feb. 2, 2017) ($1,000 in punitive damages); *Carrington v. Easley*, 2011 WL 2132850, at *5 (E.D.N.C. May 25, 2011) ($5,000 in punitive damages); *McKinley v. Trattles*, 732 F.2d 1320, 1327-28 (7th Cir. 1984) (reducing a $15,000 punitive damages award to $6,000).

In sum, the $500,000 in punitive damages awarded against Defendant is so unreasonable as to be a violation of Defendant's due process rights, and the Court should enter judgment as a matter of law reducing or vacating the award.

### C.   The Evidence Does Not Support the Punitive Damages Award.

Even if the Court does not find that that the punitive damages award is unconstitutionally excessive, the Court should nevertheless remit the punitive damages award. "Where the verdict is so large as to shock the conscience of the court," the court will "order[] plaintiff to remit the portion of the verdict in excess of the maximum amount supportable by the evidence or, if the remittitur were refused, to submit to a new trial." *Kazan*, 721 F.2d at 914. As the Court instructed the jury, the purpose of punitive damages is "to punish a defendant or to deter the defendant, and others like the defendant, from committing such conduct in the future." Tr. 418:25-419:2. Accordingly, punitive damages were only appropriate if the jury found that Defendant "acted maliciously or wantonly in violation or in violating Mr. Drumgo's federally protected rights." Tr. 419:3-5. Both the punitive damages award itself and the amount awarded do not comport with the evidence adduced at trial.

At trial, Plaintiff did not only contend that Defendant had grabbed his genitals—he claimed that Defendant grabbed him so violently that the skin on his penis ruptured. Tr. 111:4-13. But the jury explicitly rejected Plaintiff's claim,

finding that although Plaintiff had established an Eighth Amendment violation, he did not establish that he suffered any harm or injuries.  The record is also devoid of any indication that Defendant held any personal animus toward Plaintiff or other inmates.   Furthermore, Plaintiff himself developed a record showing that correctional officers molesting inmates during frisk searches is not an institutional issue.  Plaintiff and Burroughs both testified definitively that they had never been inappropriately touched by any other correctional officers.  Tr. 114:14-16 (Drumgo); Tr. 226:18-21 (Burroughs).  And other inmate witness called by Plaintiff testified that no officers had ever grabbed them during a frisk search.  Tr. 210:2-7 (Walker); Tr. 326:7-13 (Lopez).   Similarly, correctional officer witnesses, on cross-examination, confirmed that they had never grabbed or assaulted an inmate in all their years of service.  Tr. 278:5-7 (Abernathy); Tr. 287:4-17 (Wallace); Tr. 362:12-22 (Schaffer).

Against this record, the exorbitant punitive damages award amounts to "a windfall to [plaintiff] and would, in its effect, exceed the necessary and permissible level of punishment and deterrence." *McKinley*, 732 F.2d at 1328.  Furthermore, "the jury may have been moved by a desire to compensate [plaintiff] for his possible, though not proven, injuries." *Id.*  Any punitive or deterrent effect of such an extraordinary punitive damages award against a now-retired officer is far outweighed by the potentially significant negative impacts on the prison system. *See*

*Schreffler v. Bd. of Educ. of Delmar School Dist.*, 506 F. Supp. 1300, 1311 (D. Del. 1981) (ordering remittitur of "exorbitant" punitive damages award where school administrator's conduct was not "grossly egregious" and where the award could "have an 'overkill' effect of dissuading competent teachers from seeking out administrative positions"). Correctional officers would decline to conduct searches as thoroughly as they would otherwise perform, just to avoid being accused of misconduct. The resulting security risks include the introduction and circulation of dangerous contraband such as weapons and drugs. And potential candidates for officer positions would be dissuaded by the potential to be punished in court and in public opinion for doing their jobs. The effects on morale and recruiting can translate into dire consequences. Notably, an independent report examining the 2017 riot at JTVCC specifically found that "critically low staffing levels" and "staff burnout" contributed to the conditions leading to the deadly riot.[5]

Because the punitive damages award contravenes the trial record and is excessive in light of the potential punitive or deterrent effect, the Court should remit the award.

---

[5] Final Report: Independent Review of Security Issues at the James T. Vaughn Correctional Center (August 2017), at 29-36, https://governor.delaware.gov/wp-content/uploads/sites/24/2017/08/JTVCC-Independent-Review-Team-FINAL-Report-1.pdf.

## **CONCLUSION**

For the foregoing reasons, the Court should alter or amend the judgment or

order a new trial, or reduce the jury's disproportionate award of punitive damages.


**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Zi-Xiang Shen*
Zi-Xiang Shen (#6072)
Kenneth L. Wan (#5667)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Zi-Xiang.Shen@delaware.gov
Kenneth.Wan@delaware.gov
*Attorneys for Defendant*


Dated: January 13, 2022