## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DE SHAWN DRUMGO, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | C.A. No. 14-1135-CFC |
| | ) | |
| SGT. WILLIAM KUSCHEL, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION TO ALTER OR AMEND JUDGMENT <u>OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL</u>

Daniel M. Silver (#4758)
Angela C. Whitesell (#5547)
Shannon D. Humiston (#5740)
Alexandra M. Joyce (#6423)
**MCCARTER & ENGLISH, LLP**
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
awhitesell@mccarter.com
shumiston@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiff*
*DeShawn Drumgo*

Dated: February 10, 2022

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................1

II. BACKGROUND ...................................................................................1

 A. The Sexual Assaults .................................................................1

 B. The Trial ...................................................................................3

III. LEGAL STANDARDS .........................................................................3

 A. Rule 50(b) – Judgment as a Matter of Law...............................3

 B. Rule 59(e) – Alter or Amend Judgment .................................4

 C. Rule 59(a) – New Trial............................................................4

IV. ARGUMENT.........................................................................................5

 A. The Admission of Mr. Burroughs Testimony Did Not Cause Manifest Injustice .........................................................5

 B. The Punitive Damages Award is Not Constitutionally Excessive ................................................................................10

  1. Degree of Reprehensibility .....................................11

  2. Comparable Cases....................................................13

 C. The Evidence Supports the Punitive Damages Award .......17

V. CONCLUSION....................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
  561 F.3d 199 (3d Cir. 2009) ..........................................................................4, 20

*Brilla v. Pettit*,
  57 F. App'x 947 (3d Cir. 2003) ..........................................................................10

*Cash v. Cty. of Erie*,
  2009 WL 3199558 (W.D.N.Y. Sept. 30, 2009)....................................................14

*CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*,
  499 F.3d 184 (3d Cir. 2007) ..............................................................................12

*Cleveland v. Curry*,
  2014 WL 690846 (N.D. Cal. Feb. 21, 2014) ......................................................16

*Cooper v. City of Chicago*,
  2018 WL 3970141 (N.D. Ill. Aug. 20, 2018) ......................................................13

*Davis v. Yates*,
  2020 WL 526129 (D.N.J. Feb. 3, 2020) ..............................................................18

*Delucia v. Great Stuff, Inc.*,
  2015 WL 5157127 (Del. Super. Ct. Apr. 10, 2015) .....................................14, 16

*DeYapp v. Tracy*,
  2006 WL 8443773 (D.N.M. Aug. 14, 2006) ......................................................13

*Doe v. Green*,
  2021 WL 2188534 (S.D.N.Y. Apr. 29, 2021) ....................................................13

*Doe v. United States*,
  2018 WL 2431774 (D. Ariz. May 30, 2018) ......................................................13

*Dunne v. Res. Converting, LLC*,
  991 F.3d 931 (8th Cir. 2021) ..............................................................................17

ii

*Etters v. Shanahan*,
  2013 WL 787344 (E.D.N.C. Feb. 6, 2013) ........................................................14

*Hall v. Terrell*,
  648 F. Supp. 2d 1229 (D. Colo. 2009)................................................................14

*Hardy v. City of Milwaukee*,
  88 F. Supp. 3d 852 (E.D. Wis. 2015) .................................................................15

*Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*,
  181 F.3d 446 (3d Cir. 1999) ...............................................................................12

*Jester v. Hutt*,
  937 F.3d 233 (3d Cir. 2019) ...............................................................................10

*Johnson v. Elk Lake*,
  283 F.3d 138 (3d Cir. 2002) .............................................................................6, 9

*Jones Lang Lasalle Ams. Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 313*,
  2017 WL 6417631 (D. Del. Dec. 15, 2017) .........................................................5

*Kazan v. Wolinski*,
  721 F.2d 911 (3d Cir. 1983) ...............................................................................17

*Keenan v. City of Philadelphia*,
  983 F.2d 459 (3d Cir. 1992) ...............................................................................17

*Lampley v. Onyx Acceptance Corp.*,
  340 F.3d 478 (7th Cir. 2003) ..............................................................................13

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993) ................................................................................3, 4

*Lopez Garza v. Citigroup Inc.*,
  2016 WL 7197364 (D. Del. Dec. 9, 2016) ............................................................4

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999) .............................................................................4, 20

*Mathie v. Fries*,
  121 F.3d 808 (2d Cir. 1997) ...........................................................................14, 15

iii

*McKinley v. Trattles*,
  732 F.2d 1320 (7th Cir. 1984) ........................................................14, 15, 16, 17

*Moore v. Mann*,
  823 F. App'x 92 (3d Cir. 2020) ...........................................................18

*Orexo AB v. Actavis Elizabeth LLC*,
  No. 17-205-CFC, 2019 WL 6728637 (D. Del. Dec. 11, 2019) ...........................7

*Ortiz v. Lasker, Jr.*,
  2010 WL 3476017 (W.D.N.Y. Aug. 30, 2010) ...................................................14

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
  15 F. Supp. 2d 406 (D. Del. 1998)........................................................7

*Roebuck v. Drexel Univ.*,
  852 F.2d 715 (3d Cir. 1988) ..................................................................5

*Siemens Med. Sols. USA, Inc. v. Saint Gobain Ceramics & Plastics, Inc.*,
  2009 WL 4891774 (D. Del. Dec. 16, 2009) ........................................4

*St. Clair Intell. Prop. Consultants, Inc. v. Toshiba Corp.*,
  2015 WL 5826815 (D. Del. Oct. 2, 2015) ..........................................5

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003)........................................................................10, 11

*Teri Woods Pub., L.L.C. v. Williams*,
  2013 WL 6388560 (E.D. Pa. Dec. 6, 2013)..........................................5, 6

**Statutes**

42 U.S.C. § 1983 ...............................................................................1, 18

42 U.S.C. ch. 147 § 15601 *et seq.*........................................................2, 15

**United States Constitution**

U.S. Const amend. VIII.........................................................1, 3, 11, 18

U.S. Const. amend. XIV .......................................................................10

iv

**Rules**

Fed. R. Civ. P. 50 .................................................................................3, 20

Fed. R. Civ. P. 59 ..........................................................................3, 4, 5, 7, 20

Fed. R. Civ. P. 415 .................................................................................6, 9

**Other Authorities**

https://www.merriam-webster.com/dictionary/ (last visited Feb. 1, 2022)      8

## I.  INTRODUCTION

This is a § 1983 civil rights action in which Plaintiff DeShawn Drumgo, Sr. ("Plaintiff"), who was an inmate at the James T. Vaughn Correctional Center ("JTVCC"), sued Defendant William Kuschel, who was a correctional officer at the JTVCC, for violating his Eighth Amendment rights by sexually assaulting him during a frisk search.  After a two-day trial, the jury granted judgment in favor of Plaintiff and awarded $1 in nominal damages and $500,000 in punitive damages. Defendant has filed a renewed motion for judgment as a matter of law and a motion to alter or amend the judgment or, in the alternative, for a new trial.  (D.I. 217).  This is Plaintiff's opposition in response.

## II. BACKGROUND

### A.     The Sexual Assaults

On May 29, 2014, after exiting the chow hall, Plaintiff was directed to the Defendant for a routine frisk search required of all inmates upon leaving the chow hall.  (Tr. 109:6-13).  Plaintiff testified that, during the frisk search, Defendant sexually assaulted him by grabbing and squeezing his penis.  (Tr. 110:18-111:9). Plaintiff reacted by saying "let go of my dick."  (Tr. 110:7).  When the other correctional officers in the area heard the commotion, "[t]hey just laughed."  (Tr. 112:5-7).

1

Three other inmates—Isiah Walker, Alem Lopez, and Curtis Mercer—witnessed the May 29, 2014 incident and testified at trial consistent with Plaintiff's version of the events.  (Tr. 210:8-212:6; 326:14-331:9; 341:22-343:25).  One of those inmates, Mr. Lopez, was frisk searched just before Plaintiff and testified that he had stopped to observe Defendant's frisk search of Plaintiff because he "wanted to know whether it was just me that [Defendant] had, like, patted down like that, or he would do that with the next person."  (Tr. 328:6-13).  Mr. Lopez explained that "I ain't never had nobody pat me down like that," and by "like that," he meant "going all up in my privates."  (*Id*.).  Another inmate, Marvin Burroughs, testified that in the fall of 2013 Defendant frisk searched him three times in one week and each time groped his genitals.  (Tr. 225:10-226:8).

Immediately following the May 29, 2014 incident, Plaintiff filed a grievance pursuant to the Prison Rape Elimination Act ("PREA").  (Tr. 123:15-124:13).  Stanley Baynard, an internal affairs investigator at JTVCC, was assigned to investigate the PREA complaint.  (*Id*.; Tr. 29:12-14).  As part of the investigation, Mr. Baynard spoke with only the Plaintiff and the Defendant.  (Tr. 308:10-13).  He did not make any efforts to determine if there were other witnesses, even though it would have taken less than a half-hour to do so, and he did not speak with any of the officers or inmates that Plaintiff identified as witness.  (Tr. 308:14-311:15).  Mr. Baynard testified that he did not send Plaintiff to medical for an evaluation to

2

confirm whether there was any physical injury. (Tr. 316:10-16). After his cursory investigation, Mr. Baynard concluded that Plaintiff's grievance was unfounded. (Tr. 307:17-19, 308:4-6). Mr. Burroughs testified that he also filed a grievance after his sexual assault but that it was, likewise, deemed unfounded. (Tr. 228:8-17).

### B.     The Trial

The Court held a two-day jury trial, from December 13-14, 2021. At the conclusion of the trial, the jury found that Defendant violated Plaintiff's Eighth Amendment rights, but Plaintiff did not suffer injuries for which he could be compensated as a result of Defendant's act and, therefore, awarded nominal damages. (D.I. 211). The jury also awarded punitive damages in the amount of $500,000. (*Id.*).

## III.  LEGAL STANDARDS

### A.     Rule 50(b) – Judgment as a Matter of Law

"If the court does not grant a motion for judgment as a matter of law made under Rule 50(a) . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "[J]udgment as a matter of law should be granted sparingly." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). "[A] court may grant a judgment as a matter of law contrary to the verdict only if 'the record is critically deficient of the minimum quantum of evidence' to sustain the verdict."

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009) (quoting *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)). In making this determination, the court "may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, 4 F.3d at 1166.

### B.    Rule 59(e) – Alter or Amend Judgement

"[T]he standard for obtaining relief under Rule 59(e) is a difficult one to meet." *Siemens Med. Sols. USA, Inc. v. Saint Gobain Ceramics & Plastics, Inc.*, 2009 WL 4891774, at *2 (D. Del. Dec. 16, 2009).  To succeed on a motion to alter or amend a judgment under Rule 59(e), the moving party must show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [entered the judgment]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  A motion to alter or amend a judgment "that advances the same arguments already thought through and rejected by the court – rightly or wrongly – should be denied."  *Lopez Garza v. Citigroup Inc.*, 2016 WL 7197364, at *1 (D. Del. Dec. 9, 2016).

### C. Rule 59(a) – New Trial

Rule 59(a) permits a district court judge, to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."

Fed. R. Civ. P. 59(a).  "[T]he decision of whether to grant a new trial rests within the sound discretion of the District Court."  *St. Clair Intell. Prop. Consultants, Inc. v. Toshiba Corp.*, 2015 WL 5826815, at *1 (D. Del. Oct. 2, 2015).  The motion for a new trial should be granted only when "the verdict is contrary to the great weight of the evidence, thus making a new trial necessary to prevent a miscarriage of justice."  *Roebuck v. Drexel Univ.*, 852 F.2d 715, 736 (3d Cir. 1988).

## IV.   ARGUMENT

### A.   The Admission of Mr. Burroughs' Testimony Did Not Cause Manifest Injustice.

Defendant contends that the Court should "alter or amend the judgment, or alternatively, order a new trial," because it erred in admitting the testimony of Marvin Burroughs.  (D.I. 218 at 2, 7).  According to Defendant, this evidentiary ruling "was an error of law that resulted in manifest injustice."  (*Id*. at 3).

"The standard for 'manifest injustice' is stringent."  *Jones Lang Lasalle Ams. Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 313*, 2017 WL 6417631, at *3 (D. Del. Dec. 15, 2017).  "While the Third Circuit has not defined the parameters of 'manifest injustice,' district judges have found guidance in Black's Law Dictionary, finding that the term encompasses 'direct, obvious, and observable' error."  *Id*. (citing *Conway v. A.I. duPont Hosp. for Children*, 2009 WL 1492178, at *7 (E.D. Pa. May 26, 2009)).  In other words, "manifest injustice requires that the error be apparent to the point of being indisputable."  *Teri Woods Pub., L.L.C. v. Williams*,

5

2013 WL 6388560, at *3 (E.D. Pa. Dec. 6, 2013).  Defendant's disagreement with the Court's evidentiary ruling does not meet the standard of manifest injustice for multiple reasons.

Defendant primarily contends that the Court erred by not hearing Mr. Burroughs' testimony directly from Mr. Burroughs himself before ruling that he could testify.  (D.I. 218 at 3-4).  In other words, the Court erred in accepting Plaintiff's representation of Mr. Burroughs' anticipated testimony instead.  (*Id*.).  Neither Rule 415 nor Third Circuit precedent expressly imposes any requirements on how a proffer related to Rule 415 testimony is made.[1]  But even if getting the proffer directly from the witness was the preferred practice, the Court offered that option to Defendant, and Defendant rejected it.  (*See* Tr. 20:1-7).  Specifically, the Court had the following colloquy with Defense counsel during oral argument on the motion *in limine*:

> DEFENDANT: [A]ll we have is plaintiff's word that, oh, this is what Mr. Burroughs would testify to, but it's --
>
> THE COURT: Well, we can get a proffer from Mr. Burroughs to take care of that. I mean, is that a proffer

---

[1] Defendant relies on *Johnson v. Elk Lake* for the proposition that the Third Circuit requires a Rule 415 proffer to come directly from a Rule 415 witness. (D.I. 218 at 3-4). But this improperly elevates the background facts of a case into a precedential holding. By recounting the testimony Radwanski gave in her deposition, the Third Circuit did not expressly or impliedly hold that all cases involving a Rule 415 witness must submit deposition testimony before being allowed to testify. *Johnson v. Elk Lake*, 283 F.3d 138, 149-50 (3d Cir. 2002).

6

> from Mr. Burroughs as opposed to the [plaintiff]?  Does
> that take care of it?
>
> DEFENDANT: No, Your Honor.

(*Id.*).  Defendant cannot claim indisputable error resulting in manifest injustice based on a choice he made.  Accordingly, this argument was waived, and therefore, should be rejected.

In addition, *if* Mr. Burroughs' actual testimony was so different from Plaintiff's proffer that the Court should have struck it, thereby preventing the jury from considering it during their deliberations, Defendant failed to make this motion at the end of Mr. Burroughs' testimony or, indeed, at any point during the trial.  For that additional reason, this argument should be waived.  *See Orexo AB v. Actavis Elizabeth LLC*, No. 17-205-CFC, 2019 WL 6728637 (D. Del. Dec. 11, 2019) ("Having failed to raise before or during trial that the . . . analysis I employed in granting Actavis's motion *in limine* needed to be redone in light of [subsequent developments in] the case, Orexo cannot now raise that issue in a Rule 59 motion."); *Procter & Gamble Co. v. Paragon Trade Brands, Inc*., 15 F. Supp. 2d 406, 409 (D. Del. 1998) ("A Rule 59 motion may not be used as a vehicle to advance additional arguments that a party could have made before judgment but neglected to do so.").

In any event, Mr. Burroughs' testimony was not so different from Plaintiff's proffer that any motion to strike, if made, should have obviously and indisputably been granted.  Defendant identifies two purported differences.  (D.I. 218 at 5-6).

First, in Defendant's words, Plaintiff represented that Mr. Burroughs "will testify that during *a* frisk search performed by Defendant, Defendant grabbed and squeezed his groin in the same manner alleged by Plaintiff."[2]   (D.I. 218 at 5 (emphasis in original) (citing Tr. 21:1-2)).  Defendant contends that "a" means "only one" and, therefore, Mr. Burroughs' testimony was inconsistent with the proffer when he testified that Defendant "groped" his "genitals" three times during three consecutive frisk searches.  But the indefinite article "a" is defined to include "any."  *See* https://www.merriam-webster.com/dictionary/a (last visited Feb. 1, 2022).  Defendant points to no authority that "a" means "one and only one."  Accordingly, Defendant's contention that the Court would have indisputably erred if it did not strike Mr. Burroughs' testimony as inconsistent with the proffer should be rejected.

Second, Defendant contends that Mr. Burroughs' testimony was different from the proffer, because Mr. Burroughs testified that the Defendant "groped" his genitals instead of "grabbed and squeezed" his genitals.  (D.I. 218 at 5-6).  The terms "grope" and "grab" have similar meanings.  *Compare* https://www.merriam-webster.com/dictionary/grope (last visited Feb. 1, 2022) (transitive verb "grope" means to "feel up"); https://www.merriam-webster.com/dictionary/grab (last visited

---

[2] Defendant does not quote a statement made by Plaintiff but instead relies on a part of a question from the Court to Defendant about "*a* sexual assault in *a* prior incident." (*See* D.I. 218 at 5 (citing Tr. 21:1-2)).  Accordingly, Defendant's argument does not rely on an express representation by Plaintiff.

8

Feb. 1, 2022) (transitive verb "grab" means to "grasp").  To the extent Defendant believed there were potential differences between "grabbed" and "groped," such that Defendant's hands could have only incidentally brushed against Mr. Burroughs' genitals, Defendant had the opportunity to explore that issue on cross examination but failed to do so.  (*See* Tr. 228:23-229:24).

Finally, the test for Rule 415 is "substantially similar," not "identical," as Defendant is requiring.  (*See* D.I. 218 at 6).  And, contrary to Defendant's contention, Plaintiff satisfied that standard.  In *Johnson v. Elk Lake*, the Third Circuit affirmed a district court's decision to exclude Rule 415 testimony because the two incidents were not substantially similar.  283 F.3d 138, 158–59 (3d Cir. 2002).  In that case, the defendant was a guidance counselor, the plaintiff was a student, and the excluded witness was a teacher (i.e., an adult co-worker); the incident with the teacher occurred in front of another teacher, whereas the incident with the student occurred when no one else was present; in the incident with the teacher, the defendant's hand touched her crotch after he lifted her off the ground and threw her over his shoulders, in what might have been an attempt at horse-play, whereas, in the incident with the student, the defendant repeatedly sent her letters, roses, and cards, attempted on numerous occasion to hug and kiss her and once fondled her breasts and vagina.  *Id.* at 144, 158-59.  None of these material differences are present here.  The relationship to the Defendant is same; the setting is the same; the precipitating events leading to

9

the assault are the same; and the method and manner of the assault are the same.  Mr. Burroughs testified that, like Plaintiff, he was an inmate at JTVCC; like Plaintiff, he was frisk searched by Defendant when he exited the chow-hall; and like Plaintiff, during this frisk search, Defendant inappropriately grabbed or groped his genitals. (Tr. 224:24-226:8).  For all of these reasons, Defendant has failed to show that a manifest injustice occurred such that the Court should alter or amend the judgment or, in the alternative, grant a new trial.

## B. The Punitive Damages Award Is Not Constitutionally Excessive

The Due Process Clause of the Fourteenth Amendment prohibits a "grossly excessive" punitive damages award, because it "furthers no legitimate purpose and constitutes an arbitrary deprivation of property."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  To determine if a punitive damages award is "grossly excessive," courts consider three "guideposts": "(1) the degree of reprehensibility of the tortuous conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases."  *Brilla v. Pettit*, 57 F. App'x 947, 949 (3d Cir. 2003).

In cases where nominal damages were awarded, as they were here, the second guidepost, considering ratios, "does not apply."  *Jester v. Hutt*, 937 F.3d 233, 242 (3d Cir. 2019) (quoting *Romanski v. Detroit Entm't, LLC.*, 428 F.3d 629, 645 (6th

10

Cir. 2005)).  Although the second guidepost does not apply here, the first and third guideposts do apply.  Defendant inexplicably ignored the first guidepost in his opening brief, (*See* D.I. 218 at 8-13), and thus waived any arguments regarding it.[3] Plaintiff addresses each applicable guidepost below.

### 1.     Degree of Reprehensibility

According to the Supreme Court, "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."  *State Farm*, 538 U.S. at 419 (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)).  In evaluating the reprehensibility of a defendant's conduct, courts consider whether: (1) "the harm caused was physical as opposed to economic"; (2) "the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others"; (3) "the target of the conduct had financial vulnerability"; (4) "the conduct involved repeated actions or was an isolated incident"; and (5) "the harm was the result of intentional malice, trickery, or deceit, or mere accident."  *Id*.

Plaintiff easily satisfies multiple factors.  For factor (1), Defendant was found liable for violating Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment because he sexually assaulted Plaintiff during a frisk search.

---

[3] Defendant cannot address the first guidepost in his reply brief, because arguments not made in the opening brief are waived.  *ViaTech Tech. Inc. v. Microsoft Corp.*, 2017 WL 2538570, at *8 (D. Del. June 12, 2017).

This implicates physical, as opposed to economic, harm, which warrants a greater degree of reprehensibility. *See Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 467 (3d Cir. 1999) (recognizing that economic torts are "less worthy of large punitive damages awards than torts inflicting injuries to health or safety").

For factors (2) and (4), Plaintiff presented evidence that this was not an isolated incident. Defendant not only sexually assaulted Plaintiff, but also sexually assaulted other inmates in the same manner. (Tr. 328:6-13; Tr. 225:10-226:8). These factors have more force when defendant's conduct extends beyond his dealings with plaintiff. *See CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 191 (3d Cir. 2007) ("The repeated conduct subfactor will necessarily have less force where the defendant's misconduct did not extend beyond his dealings with the plaintiff.") (internal quotation marks omitted).

For factor (5), the jury necessarily found that Defendant acted maliciously when it awarded punitive damages, because the jury was instructed that an award of punitive damages can only be given if it found that the Defendant "acted maliciously or wantonly." (Tr. at 419:3-16).

Finally, factor (3), which considers financial vulnerability, was not an element of Plaintiff's claim, but there can be no doubt given the context of this case, that Plaintiff was in a financial, institutional, and socially vulnerable positon compared to the Defendant. Plaintiff was an inmate in a correctional institution subject to the

12

control and authority of correctional officers like Defendant.  Given that all of the factors clearly weigh in favor of Plaintiff, the Court should find that the degree of reprehensibility is high.

### 2.   Comparable Cases

"Comparisons of damages awarded in other cases are often problematic due to differences in facts, injuries, time of trial, and community estimations of appropriate compensation."  *DeYapp v. Tracy*, 2006 WL 8443773, at *5 (D.N.M. Aug. 14, 2006); *Cooper v. City of Chicago*, 2018 WL 3970141, at *8 (N.D. Ill. Aug. 20, 2018) ("[A]ny attempt to compare damages across different cases is 'inherently problematic.'" (quoting *Deloughery v. City of Chicago*, 2004 WL 1125897, at *5 (N.D. Ill. May 20, 2004)).  Thus, "[a]wards in other cases provide a reference point that assists the court in assessing reasonableness," but "they do not establish a range beyond which awards are necessarily excessive."  *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 485 (7th Cir. 2003).

Courts have upheld punitive damages awards over six-figures where a correctional officer sexually assaulted an inmate.  *See Doe v. Green*, 2021 WL 2188534, at *1-*2 (S.D.N.Y. Apr. 29, 2021), *report and recommendation adopted*, 2021 WL 2188148 (S.D.N.Y. May 28, 2021) (awarding $200,000 for correctional officer's sexual assault of prisoner); *Doe v. United States*, 2018 WL 2431774, at *5 (D. Ariz. May 30, 2018) (awarding $1.25 million for prison guard's sexual assaults

13

of inmate); *Etters v. Shanahan*, 2013 WL 787344, at *1-*2 (E.D.N.C. Feb. 6, 2013), *report and recommendation adopted*, 2013 WL 792834 (E.D.N.C. Mar. 4, 2013) (awarding $100,000 for officer's sexual assaults of inmate); *Ortiz v. Lasker, Jr.*, 2010 WL 3476017, at *1 (W.D.N.Y. Aug. 30, 2010) (awarding $250,000 for correctional officer's sexual assault of inmate); *Cash v. Cty. of Erie*, 2009 WL 3199558, at *1 (W.D.N.Y. Sept. 30, 2009) (awarding $150,000 for guard's sexual assault of pretrial detainee); *Hall v. Terrell*, 648 F. Supp. 2d 1229, 1231 (D. Colo. 2009) (awarding $1 million for prison guard's sexual assaults of prisoner).

Equally important, Defendant has not pointed to any case where a court substituted its judgment for that of the jury's and reduced a punitive damages award by ***ninety-nine percent*** (99%), as Defendant suggests would be appropriate here. (*See* D.I. 218 at 10-11 (citing cases where $5,000 in punitive damages were awarded)). In the cases cited by Defendant, the punitive damages award were reduced by no more than sixty percent (60%), meaning plaintiff retained at least forty percent (40%) of the award amount set by the jury. *See McKinley v. Trattles*, 732 F.2d 1320, 1322–23 (7th Cir. 1984) (reducing $15,000 punitive damages award by 60% to $6,000); *see also Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997) (reducing $500,000 punitive damages award by 52% to $240,000); *Delucia v. Great Stuff, Inc.*, 2015 WL 5157127 (Del. Super. Ct. Apr. 10, 2015) (reducing $500,000 punitive damages award by 50% to $250,000). "[T]he Court has the authority to grant a new

14

trial on damages or a remittitur of an award that is excessively large," but "consistent with the Seventh Amendment's limitations on a judge's power to reexamine a jury verdict, the Court must be sure to accord proper deference to the jury's verdict." *Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852, 880 (E.D. Wis. 2015). A remittitur that reduces a jury award by ninety-nine percent (99%) is in no way consistent with the concept of deference to the jury's verdict.

In addition, two of the cases cited by Defendant—*McKinley v. Trattles*, 732 F.2d 1320 (7th Cir. 1984) and *Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997)—are decades old and predate the adoption of the Prison Rape Elimination Act (in 2003). Given increasing intolerance to mistreatment of inmates, increased vigilance in the reporting and prosecution of sexual assault in prison settings, and time-value of money considerations, these cases are not truly comparable. Also, these prisoner civil rights cases are usually brought *pro se* by inmates with little education, and therefore, to the extent the reports even make it outside of the prison walls to a court docket (which is rare as a result of poor internal investigations and hush-hush mentality), they rarely make it past dispositive motions and to trial. Therefore, cases that are both (a) temporally relevant to today's enhanced intolerance of sexual assault and abuse of power; and (b) on the same facts, are scant. Thus, deference should be given to this jury, who heard these facts, and awarded this verdict.

15

Finally, assuming *arguendo* the Court finds Defendant's cases persuasive at first blush, some corrections are in order. In *Delucia v. Great Stuff*, the court did not "reduce[] the punitive damages to $80,000 again each defendant." (*See* D.I. 218 at 10). Instead, the court reduced a $500,000 punitive damages award to $240,000, such that defendant Bruette would pay $67,500; defendant Kuehn would pay $112,500; and defendant Great Stuff would pay $60,000.[4] *See Delucia v. Great Stuff, Inc.*, 2015 WL 5157127, at *3-*4 (Del. Super. Ct. Apr. 10, 2015). Thus, at least one defendant in *Great Stuff* paid over six-figures in a punitive damages award and the total award was substantial. In *Cleveland v. Curry*, the jury did not award only "$5,000 in punitive damages to each inmate." (*See* D.I. 218 at 11). Instead, the jury awarded $25,000 in punitive damages comprised of a $5,000 award against Defendant Abanico and a $20,000 award against Defendant Curry. *See Cleveland v. Curry*, 2014 WL 690846, at *1 (N.D. Cal. Feb. 21, 2014). And, in *McKinley v. Trattles*, the appellate court did not "reduc[e] a $15,000 punitive damages award to $6,000." (D.I. 218 at 12). Instead, the appellate court instructed the district court to award an amount to be set "*at the discretion of the district court*." *McKinley v. Trattles*, 732 F.2d 1320, 1328 (7th Cir. 1984). The appellate court offered $6,000

---

[4] The maximum possible award against Bruette was $90,000, but $22,500 of that was paid by Great Stuff, leaving $67,500 to be paid by Bruette. The maximum possible award against Kuehn was $150,000, but $37,500 of that was paid by Great Stuff, leaving $112,500 to be paid by Kuehn. The portions of the two awards paid by Great Stuff (i.e., $22,500 and $37,500) equal $60,000.

16

as a "suggested guideline limitation," but made clear that the amount was not a "mandatory ceiling."  *Id*. at 1327.

In sum, Plaintiff respectfully requests that the Court honor the province of the jury and preserve the punitive damages award, both to punish Defendant for his reprehensible conduct and to deter other correctional officers from committing similar abuses against incarcerated individuals.

## C.     The Evidence Supports the Punitive Damages Award

According to Defendant, "[e]ven if the Court finds that the punitive damages award is not unconstitutionally excessive, the Court should nevertheless remit the punitive damages award," because "the verdict is so large as to shock the conscience." (D.I. 218 at 13 (citing *Kazan v. Wolinski*, 721 F.2d 911, 914 (3d Cir. 1983)). Defendant has failed to explain how this argument is not a rehash of his previous argument that the punitive damages award was "grossly excessive."  In *Kazan*, the case on which Defendant relies for the "shock the conscience" rule, the trial court ordered remittitur of the punitive damages award because it was "'***grossly excessive***' in light of the evidenced produced."  721 F.2d at 914 (emphasis added); *see also Dunne v. Res. Converting, LLC*, 991 F.3d 931, 939 (8th Cir. 2021) (explaining that "Punitive damages are grossly excessive [in violation of the Due Process clause] if they shock the conscience or demonstrate passion or prejudice by the jury."); *Keenan v. City of Philadelphia*, 983 F.2d 459, 469 (3d Cir. 1992) ("We may grant a new trial

17

or remittitur only if the verdict awarded by the district court is so grossly excessive as to shock the judicial conscience."). Defendant has also failed to set forth any guidelines on how a Court is to determine whether an award "shocks the conscience," or explain how those guidelines would require the award be lowered here. For all of these reasons, the Court should disregard Defendant's "shock the conscience" argument.

Defendant also argues that the punitive damages award "do[es] not comport with the evidence adduced at trial" because: (1) the jury found that Plaintiff established an Eighth Amendment violation but did not establish any harm or injuries and, therefore, awarded nominal damages; (2) the record is devoid of any evidence that "Defendant held any personal animus toward Plaintiff or other inmates"; and (3) sexually assaulting inmates during frisk searches "is not an institutional issue." (D.I. 281 at 13-14). None of these arguments have merit.

First, punitive damages under 42 U.S.C. § 1983 "do not require that a plaintiff show actual physical injury and may be awarded 'based solely on a constitutional violation' since these damages are intended to 'vindicate constitutional rights' or 'deter or punish egregious violations of constitutional rights.'" *Davis v. Yates*, 2020 WL 526129, at *13 (D.N.J. Feb. 3, 2020) (quoting *Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3d Cir. 2000)); *see also Moore v. Mann*, 823 F. App'x 92, 94 (3d Cir. 2020) (reversing summary judgment in defendants' favor because plaintiff-prisoner who is

18

"unable to show a sufficient physical injury at trial" could still seek punitive damages under 42 U.S.C. § 1983 for an Eighth Amendment violation).  Accordingly, it is irrelevant that the jury here did not find any physical harm or injuries warranting compensatory damages.

Second, Plaintiff was not required to show "personal animus" in order to be awarded punitive damages.  Instead, as the jury was instructed, Plaintiff was required to show that the Defendant "acted maliciously or wantonly."  (Tr. at 419:3-16).  "A defendant is malicious when he consciously desires to violate federal rights of which he is aware, or when he consciously desires to injure the plaintiff in a manner he knows to be unlawful."  (*Id*.).  "A violation is wanton if the person committing the violation recklessly or callously disregarded the plaintiff's rights."  (*Id*.).  Defendant has not argued, and cannot argue now, that Plaintiff failed to show that Defendant acted maliciously or wantonly.

Finally, although not required, Plaintiff did reveal broader institutional issues in connection with his sexual assault.  Plaintiff showed that: (i) his assault was not a single isolated incident (*see* Tr. 328:6-13; Tr. 225:10-226:8); (ii) other correctional officers not only condoned Defendant's behavior but found it funny (*see* Tr. 211:25-212:6; 330:23-331:2; 343:13-16); and (iii) investigations into any complaints about Defendant's actions were poorly conducted and quickly dismissed.  (Tr. 304:7-12, 308:10-13, 316:10-16, 228:8-17).

19

For all of these reasons, the Court should reject Defendant's argument that the evidence does not support the punitive damages award.

## V. CONCLUSION

In conclusion, none of Defendant's arguments satisfy the standard for granting judgment as a matter of law under Rule 50(b) or altering or amending the judgment under Rule 59(e).  Defendant has not argued, let alone shown, that "'the record is critically deficient of the minimum quantum of evidence' to sustain the verdict." *See Acumed*, 561 F.3d at 211.  Defendant also has not shown that there is a "need to correct a clear error of law or fact or to prevent manifest injustice," *Max's Seafood*, 176 F.3d at 677.  Accordingly, Defendant's motions should be denied.

Dated: February 10, 2022                    MCCARTER & ENGLISH, LLP

                                            */s/ Daniel M. Silver*
                                            Daniel M. Silver (No. 4758)
                                            Angela C. Whitesell (#5547)
                                            Shannon D. Humiston (No. 5740)
                                            Alexandra M. Joyce (No. 6423)
                                            Renaissance Centre
                                            405 N. King Street, 8th Floor
                                            Wilmington, Delaware 19801
                                            (302) 984-6300
                                            dsilver@mccarter.com
                                            awhitesell@mccarter.com
                                            shumiston@mccarter.com
                                            ajoyce@mccarter.com

                                            *Counsel for Plaintiff DeShawn Drumgo*

ME1 39319168v.13