IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DE SHAWN DRUMGO,

                    Plaintiff,

          v.                                    Civil Action No. 14-1135-CFC

SGT. WILLIAM KUSCHEL

                    Defendant.

---

Daniel M. Silver, Shannon D. Humiston, Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, Delaware

          *Counsel for Plaintiff*

Zi-Xiang Shen, Kenneth L. Wan, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware

          *Counsel for Defendant*

## **MEMORANDUM OPINION**

August 24, 2022
Wilmington, Delaware

_____

COLM F. CONNOLLY
CHIEF JUDGE

Pending before me is Defendant William Kuschel's Renewed Motion for

Judgment as a Matter of Law and to Alter or Amend Judgment, or in the

Alternative, for a New Trial. D.I. 217. When the events that gave rise to this

action occurred, Kuschel was a correctional officer and Plaintiff De Shawn

Drumgo was a prisoner at the James T. Vaughn Correctional Center (Vaughn) in

Delaware. Drumgo sued Kuschel under 42 U.S.C. § 1983 for violating Drumgo's

Eighth Amendment right against cruel and unusual punishment during a routine

frisk search at the prison. D.I. 191 at 5.

After a two-day trial, a jury found that Drumgo "prove[d] that William

Kuschel committed an act that violated Mr. Drumgo's Eighth Amendment rights"

but did not "prove that he suffered any injuries as a result of" that act. D.I. 211 at

1. Consistent with the explicit directions on the verdict sheet, the jury therefore

awarded Drumgo nominal damages of $1. D.I. 211 at 1. The jury also awarded

Drumgo punitive damages of $500,000. D.I. 211 at 2.

Kuschel advances two principal arguments in support of his motion. He

argues first that I should grant him a new trial and vacate the judgment against him

because I erroneously admitted at trial the testimony of Marvin Burroughs. He

argues in the alternative that I should reduce or vacate the punitive damages award.

## I.   THE TRIAL

Drumgo presented five witnesses at trial—himself and four fellow inmates from Vaughn.  Drumgo testified that during a routine frisk search performed on him after he exited Vaughn's dining hall on May 29, 2014, Kuschel grabbed and held onto Drumgo's genitals, causing him physical injuries and long-term mental distress.  Tr. 110:18–111:9, 128:15–130:24.  According to Drumgo, Kuschel "touch[ed]" and then "wouldn't let go" of Drumgo's penis, causing it to "rupture" and suffer "a cut that opened up."  Tr. 111:1–2, 9, 12.  Drumgo testified that when he yelled at Kuschel to "let go" of his genitals, the other correctional officers in the area heard the commotion and "just laughed."  Tr. 112:7.

Inmate Isiah Walker testified that on May 29 he "happened to look over and . . . [saw] Sergeant Kuschel moving his leg, moving his hands up Drumgo's leg, and that's when Drumgo said, you know, you're touching my private parts and such, and that's when the situation happened."  Tr. 211:3–7.  Walker was then asked—without objection from defense counsel—"Did you see him grab and squeeze Mr. Drumgo's groin?" to which Walker responded: "Yes."  Tr. 211:8–9.[1]

---

[1] I expressed numerous times at trial my concerns about leading questions posed to the witnesses in this case.  *See, e.g.,* Tr. 220:16–222:3 ("This is a case about credibility and you have an ethical obligation, attorneys do, not to vouch.  We need to be very careful about that and you need to be very careful about leading questions.  So, you know, the way that direct went was you asked a couple of questions to that witness.  He did not say ["]let go,["] and then you say, ["]did he say ['] let go,[?'"] and then he said ["]yes,["] and then you [get] the words ["let

2

Both Walker and inmate Alem Lopez testified that they heard officers laugh after Drumgo yelled for Kuschel to let go of his genitals. Tr. 211:25–212:6, 330:24–331:1. Lopez testified that, like Drumgo, he was frisk searched by Kuschel upon leaving the dining hall on May 29 and that during the search Kuschel "went around my waist and went on the outside of my thighs, went on the inside and went all the way up" "in my privates." Tr. 326:14–327:9, 328:13. Lopez said that because "nobody [had ever] pat[ted] [him] down like that," he "look[ed] back to see how [Kuschel] was patting down other persons." Tr. 327:19–21, 328:9–10. Lopez said that at that point he saw Kuschel frisk searching Drumgo. Tr. 327:15–25. In Lopez's words: "I couldn't really see exactly what

---

go"]. So, and then you actually, you essentially vouched, because you said, when he said ["]let go of my [genitals"] wh[en] there has not been testimony to that [effect]. And I'm just very sensitive to both sides. I am not a fact-finder here, but this is all about credibility of the people who are testifying. And so I just think, and this is going to apply to people on this side of the aisle as well. You need to be very careful about looking like you're endorsing, so when you say ["]thank you very much["] at the end of that [questioning], you need to be careful. You are—we are not to be vouching, and you can vouch without thinking about it by the way you [say] things . . . . And I just think in fairness to Mr. Kuschel and in fairness to Mr. Drumgo, if the [Mr. Kuschel's lawyers] tried to pull this, I would be raising the same concerns with the[m] if it was Mr. Kuschel's lawyers that tried to do that. We just need to be very, very sensitive to that. All right? So going forward, I would like everybody to think about avoiding leading questions when you are asking somebody to recount testimony that you know is going to be directly contradicted by testimony of somebody else. All right. So that's why we have the rule about leading questions. All right? So anyway, I'm going to remind Mr. Kuschel's lawyers, you need to be also very, very sensitive to that when you start questioning correctional officers. All right?); Tr. 330: 10–11 ("We don't lead. We don't lead witnesses except on cross-examination.").

[Kuschel] was doing to [Drumgo], but he was—I know he was in his inner thigh and that's when Drumgo was like, [']get off my [genitals.']" Tr. 330:20–23.

Inmate Curtis Mercer testified that he also saw Kuschel frisk search Drumgo on May 29. Tr. 342:3–6. But when asked to describe what he saw, Mercer explained that he did not see Drumgo until after he "heard the reaction of Drumgo snapp[ing]" at Kuschel, at which point he "turned around" and saw Drumgo with "this shocked look." Tr. 342:21–23. Mercer did not testify that he heard officers laughing.

A final inmate, Marvin Burroughs, testified that Kuschel groped his genitals during three frisk searches conducted in the fall of 2013. Tr. 225:10–226:8, 227:4–24.

Kuschel testified along with five other defense witnesses at trial. Kuschel denied that he assaulted Drumgo, Burroughs, or any other inmate during his years as a correctional officer. Tr. 250:25–251:5. He also testified that an internal investigation by Vaughn into Drumgo's allegations had "cleared [him] of all wrongdoing." Tr. 250:22–24.

A former correctional officer, Paul Abernathy, testified that he had worked with Kuschel at Vaughn, that he had no recollection of Kuschel ever sexually assaulting an inmate, and that he would have recalled any occasion where a fellow correctional officer "violently grabb[ed] an inmate's genitals during a search." Tr.

4

276:14–19.  Correctional Officers Franchot Wallace, Sheryl VanGorder, and Jason
Schaffer testified that they had observed Kuschel perform searches at Vaughn and
that they had never "perceive[d] any issues with how Mr. Kuschel performed frisk
searches."  Tr. 260:21–261:1, 286:13–18, 353:20–25.

Correctional Officer Stanley Baynard testified that he conducted Vaughn's
internal investigation that cleared Kuschel of Drumgo's sexual assault allegation.
Tr. 290:14–293:16.  Baynard acknowledged that as many as 20 to 25 inmates and
at least two other correctional officers besides Kuschel witnessed the incident, but
that he interviewed only Drumgo and Kuschel for his investigation.  Tr. 308:10–
309:23.  He also testified that the cameras in the area in which Kuschel's search of
Drumgo occurred were not set up to record and only allowed for live monitoring.
Tr. 315:5–316:5.

## II.    LEGAL STANDARDS

### A.    Rule 50(b)

"If the court does not grant a motion for judgment as a matter of law made
under Rule 50(a), . . . the movant may file a renewed motion for judgment as a
matter of law and may include an alternative or joint request for a new trial under
Rule 59."  Fed. R. Civ. P. 50(b).  A motion filed under Rule 50(b) "should be
granted only if, viewing the evidence in the light most favorable to the nonmovant
and giving it the advantage of every fair and reasonable inference, there is

5

insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

**B.      Rule 59(a)**

Pursuant to Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a).  One ground for a new trial is the erroneous admission of evidence that resulted in manifest injustice.  *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940) (holding that a motion for a new trial "may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence.").  If the court concludes that a challenged evidentiary ruling was in fact erroneous, it must "grant a new trial unless it was 'highly probable' that the error did not affect any 'substantial rights.'" *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 189 (3d Cir. 1990) (quoting *McQueeny v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir.1985)).  "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992).

**C.      Rule 59(e)**

Rule 59(e) permits a party to file "a motion to alter or amend a judgment." "A proper motion to alter or amend judgment must rely on one of three major

6

grounds: (1) an intervening change in controlling law; (2) the availability of new

evidence not available previously; or (3) the need to correct clear error of law or

prevent manifest injustice." *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d

1194, 1218 (3d Cir. 1995) (citations, internal quotation marks, and brackets

omitted).

## III.   DISCUSSION

### A.   The Admission of Burroughs's Testimony at Trial

I admitted Burroughs's testimony over Kuschel's objections pursuant to

Rule 415, which permits a court to "admit evidence that the party committed any

other sexual assault . . . [i]n a civil case involving a claim for relief based on a

party's alleged sexual assault." Fed. R. Evid. 415.  The Third Circuit's

> approach to the admissibility of past acts involving
> sexual assault [under Rule 415] is set out in *Johnson v.*
> *Elk Lake School District*, 283 F.3d 138 (3d Cir. 2002).
> First, the trial court must decide "whether a reasonable
> jury could find by a preponderance of the evidence that
> the past act was an 'offense of sexual assault' under Rule
> 413(d)'s definition and that it was committed by the
> defendant." *Id.* at 154–55.  Then, the trial court "may
> still exclude [the evidence] under Federal Rule of
> Evidence 403" if "its probative value is substantially
> outweighed by the danger of unfair prejudice, confusion
> of the issues, or misleading the jury, or by considerations
> of undue delay, waste of time, or needless presentation of
> cumulative evidence." *Id.* at 155 (quoting Fed. R. Evid.
> 403).  That balancing test should place "a thumb on the
> scale in favor of admissibility" if the past act is
> "demonstrated with specificity" and "is sufficiently
> similar to the type of sexual assault allegedly committed

7

> by the defendant." *Id.* at 155–56.  Otherwise, there is no
> presumption of admissibility. *Id.* at 156.  In any case,
> even in this context "the Rule 403 balancing inquiry is, at
> its core, an essentially discretionary one that gives the
> trial court significant latitude to exclude evidence." *Id.*

*Bernard v. E. Stroudsburg Univ.*, 700 F. App'x 159, 168 (3d Cir. 2017) (second

alteration in the original).

Kuschel argues that I committed legal error because I allowed Burroughs to

testify at trial without "hear[ing] Burroughs'[s] testimony prior to trial to determine

(1) whether his allegations constituted sexual assault under Rule 413 and (2)

whether his allegations were 'substantially similar' to Plaintiff's claims." D.I. 218

at 4; *see also* D.I. 218 at 7 (arguing that the Court made an "error of law in

admitting Burroughs['s] testimony without making predicate findings as required

by FRE 415").  This argument fails for two reasons.

First, Kuschel waived the argument.  Before trial, Drumgo's counsel stated

in a letter filed with the Court that Drumgo intended to call Burroughs as a witness

at trial and that Burroughs would testify that he was "subjected to frisk searches

that were performed by the Defendant" and that "during a frisk search performed

by [Kuschel]" within one year of Kuschel's alleged assault of Drumgo, Kuschel

"grabbed and squeezed [Burroughs's] groin in the same manner alleged by

[Drumgo]." D.I. 205 at 1; *see also* D.I. 205 at 2 ("Mr. Burroughs will testify that

Defendant grabbed and squeezed his groin – in the same manner at issue in this

case – which would constitute an offense of sexual assault under Rule 413."); D.I.
205 at 3 ("Both [Drumgo] and Mr. B[u]rroughs are inmates at the James T.
Vaughn Correctional Center, both were subjected to frisk searches after exiting the
dining hall that were performed by [Kuschel], and both inmates had their groin
grabbed and squeezed by [Kuschel] in an inappropriate and sexual manner. These
events occurred less than a year apart."). During the ensuing oral argument on the
admissibility of Burroughs's testimony, the following exchange occurred:

> [Counsel]: . . . [T]he Court has to make a determination
> that, you know, the proposed testimony is that it's the
> same conduct. You know, there's a clear sexual assault
> that happened *and I just don't think we have that
> because all we have is plaintiff's word that, oh, this is
> what Mr. Burroughs would testify to*, but it's –
>
> THE COURT: *Well, we can get a proffer from Mr.
> Burroughs to take care of that. I mean, is that a proffer
> from Mr. Burroughs as opposed to the defendant?
> Does that take care of it?*
>
> [Counsel]: *No, Your Honor*.

Tr. 19:22–20:7 (emphasis added). Notably, Kuschel's counsel never again argued
or suggested in any way that it was necessary for me to hear *in limine* directly from
Burroughs the substance of his testimony to decide if the acts Burroughs attributed
to Kuschel constituted sexual assault under Rule 413. Nor did Kuschel's counsel
ever argue or suggest in any way that I needed to hear *in limine* directly from
Burroughs to decide if Burroughs's allegations were "substantially similar" to the

acts Drumgo accused Kuschel of. *See* D.I. 226 at 2 ("Defendant acknowledges

that at the time of trial, he did not view a 'proffer' from Burroughs as sufficient to

address his concerns and that he did not re-assert a specific objection at the time of

Burroughs'[s] testimony."). For that reason, I focused on whether Kuschel was

unfairly prejudiced by the admission of Burroughs's testimony under Rule 403;

and, because his counsel never articulated a basis for a finding of unfair prejudice[2]

---

[2] Kuschel's counsel stated that "allowing a plaintiff to just parade in front of the
jury a line of witnesses to accuse defendant of sexual assault is extremely
prejudicial in light of the social stigma of being labeled or seen as a sexual
predator." Tr. 18:12–16. But Congress made the decision when it enacted Rules
413–15 to allow defendants accused of sexual assault to suffer this form of
prejudice. That decision was, and remains, controversial; and it is clearly at odds
with Rule 404(b), which prohibits the use of "any other crime, wrong, or act . . . to
prove a person's character in order to show that on a particular occasion the person
acted in accordance with the character." Fed. R. Evid. 404(b)(1). As the Third
Circuit noted in *Johnson*:

> Ever since their initial proposal, Rules 413–15 have been met with
> hostility by the legal establishment. *See* Judicial Conference of the
> U.S., *Report of the Judicial Conference on the Admission of
> Character Evidence in Certain Sexual Misconduct Cases*, 159 F.R.D.
> 51, 52 (1995) [hereinafter Judicial Conference Report] (observing the
> opposition of an "overwhelming majority of judges, lawyers, law
> professors, and legal organizations" to the proposed rules);
> Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence Under the
> Rules* 475 (3d ed.1996) (noting that "the professional reaction to
> [Rules 413–15] has been strongly negative"). Although Congress
> bypassed the ordinary rulemaking procedures when adopting Rules
> 413–15, the enacting legislation provided the Judicial Conference 150
> days within which to make and submit alternative recommendations
> on the rules to Congress. The Judicial Conference's Advisory
> Committee on Evidence Rules, with what it noted was "highly
> unusual unanimity," ardently opposed the new rules, fearing that they

10

or stated or suggested in any way that the admission of Burroughs's testimony would confuse the issues, mislead the jury, cause undue delay, waste time, or present cumulative evidence, I made the discretionary call to admit the testimony. *See* Tr. 18:7–31:15; *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

------

> "could diminish significantly the protections that have safeguarded persons accused in criminal cases and parties in civil cases against undue prejudice." *Judicial Conference Report*, 159 F.R.D. at 53. Embracing the views of the Advisory Committee, the Conference recommended that Congress "reconsider its policy determinations underlying Evidence Rules 413–415" or, in the alternative, adopt amendments to Rules 404 and 405 proposed by the Advisory Committee. *Id*. at 54. Congress rejected both alternatives, and the rules stand today as originally enacted.

283 F.3d at 151 (brackets in the original).

Precisely because I think Rule 415 is fundamentally flawed, I implored Kuschel's counsel to state on the record how Kuschel was unfairly prejudiced by allowing Burroughs to testify at trial. *See, e.g.,* Tr. 29:14–22 ("[T]his is why I opened up by asking what's your prejudice. For instance, you didn't say, well, they never disclosed . . . Burroughs, and we litigated the case, we took discovery and we didn't follow up [on Burroughs's alleged assault], and therefore even if they met [Rule 415(b)'s] 15-day [disclosure] requirement, we're still prejudiced because we never had a chance to look to see if there w[as] any video evidence to rebut [Burroughs] or find out who was on duty or if you don't know the date of the assault, right?"); Tr. 30:7–11 ("You have to articulate, well, what is the unfair prejudice? That's why I asked, was Burroughs disclosed in initial disclosures, and you're not putting anything on the record. I mean, now you're starting to, but you have to kind of come in and say what is the prejudice.").

Having failed to take up my offer to hear directly from Burroughs *in limine* and
having failed to renew any objection during Burroughs's testimony at trial,
Kuschel waived the ability to argue now that I should have heard Burroughs *in
limine* before admitting his testimony under Rule 415. *See Orexo AB v. Actavis
Elizabeth LLC*, 424 F. Supp. 3d 371, 382 (D. Del. 2019) ("Having failed to raise
before or during trial that the . . . analysis I employed in granting Actavis's motion
in limine needed to be redone in light of [subsequent developments in] the case,
Orexo cannot now raise that issue in a Rule 59 motion.").[3]

_____

[3] Kuschel also argues for the first time in his brief filed in support of his motion
that Burroughs's testimony at trial differed "substantively" from the proffer of the
testimony given by Drumgo's counsel. D.I. 218 at 5. This argument also was
waived, as Kuschel failed to lodge an objection to Burroughs's testimony at trial.
But in any event, the differences between Burrough's trial testimony and the
proffer are not material. Kuschel complains that Burroughs said at trial that
Kuschel "groped" his genitals whereas Drumgo's counsel proffered that Burroughs
would testify that Kuschel "grabbed and squeezed" his genitals. This seems to me
a distinction without a difference. D.I. 218 at 5. And given that the jury found
Kuschel liable for an Eighth Amendment violation but rejected Drumgo's
testimony that his genitals were ruptured by Kuschel's grabbing and squeezing, it
appears that Burroughs's testimony—which is identical to Lopez's testimony—
may have benefitted Kuschel.

Kuschel also takes issue with the fact that Burroughs testified that Kuschel
groped him on three occasions whereas Drumgo's counsel's proffer seemed to
suggest that Burroughs would testify that Kuschel assaulted Burroughs only once.
The proffer, however, was more ambiguous that Kuschel allows. Drumgo's
counsel said that Burroughs and Drumgo were both "subjected to frisk searches"
(plural), D.I. 205 at 1, and although counsel stated that Burroughs would testify
that he was assaulted during a search that occurred within a year of Kuschel's
assault of Drumgo, the proffer did not exclude the possibility that Burroughs was
groped during the other routine searches Kuschel performed on Burroughs. In any

Second, nothing in *Johnson* or *Bernard* suggests in any way that a court cannot admit testimony under Rule 415 unless it has first heard that testimony from the witness outside the presence of the jury.  On the contrary, the Court held in *Johnson* that although district courts "*might* find" an *in limine* hearing to be helpful, "an *in limine* hearing *is not required* . . . for considering the admission of evidence proffered under Rule 415."  283 F.3d at 157 n.16 (emphasis added); *accord United States v. Abrams*, 761 F. App'x 670, 676 (9th Cir. 2019) (holding that "an evidentiary hearing outside the presence of the jury is not required" to admit evidence under Rule 413 and that "the threshold preponderancy requirement for admission of prior-bad-acts evidence [under Rule 413] can be based on evidence proffered by the government other than live witness testimony").  In this case, especially since Kuschel's counsel had declined my invitation to obtain a proffer directly from Burroughs, I did not think an evidentiary hearing would prove useful.  Burroughs's account of Kuschel's acts proffered by Drumgo's counsel was virtually identical to Drumgo's assault claim.  Both men alleged that Kuschel frisk searched them when they left Vaughn's dining hall and both men alleged that Kuschel fondled their genitals when he searched them.  Thus, Burroughs's

---

event, given the fleeting nature of the searches, I do not think the fact that Burroughs testified at trial that he was groped three times as opposed to one time was significant.

allegations were substantially similar to Drumgo's claims. Moreover, Kuschel's counsel never suggested—and still does not contend—that nonconsensual groping of a person's genitals does not constitute sexual assault under Rule 413. *See* Fed. R. Evid. 413(d)(2) (defining "sexual assault" to "mean[ ] a crime under federal law or under state law . . . involving . . . contact, without consent, between any part of the defendant's body . . . and another person's genitals"). In addition, nothing was said during oral argument to suggest that Burroughs would give testimony at trial materially different from the proffer given by Drumgo's counsel. Thus, the proffer provided a basis on which to conclude that a jury could reasonably find by a preponderance of the evidence that Kuschel sexually assaulted Burroughs in substantially the same way that Drumgo alleged Kuschel assaulted him. For these reasons, as noted above, I focused on the question of whether Kuschel was unfairly prejudiced by the admission of the testimony such that it might be barred by Rule 403. Kuschel has not identified, and I do not see, any legal error in my Rule 403 calculus, and therefore I will deny his request for a new trial.

## B. The Punitive Damages Award

Kuschel argues that the jury's award of $500,000 in punitive damages violates the Due Process Clause of the Fourteenth Amendment and must be vacated or reduced as a matter of law. D.I. 218 at 7. Alternatively, he asks that I

14

exercise the discretion afforded me by Rule 59 and remit the award as unsupported by the evidence and excessive. D.I. 218 at 7.

"The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). In the usual case where a party challenges a punitive damages award on due process grounds, the court is required "to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 418. In this case, Kuschel does not dispute that the conduct for which the jury found him liable is reprehensible, and, for reasons that escape me, his counsel did not expressly address in their briefing the degree of the reprehensibility of Kuschel's conduct.[4] That leaves for

---

[4] Kuschel's counsel, who are employed by the Delaware Attorney General's Office, state in their reply brief that "[c]onsidering the factual circumstances of the case and the legal authorities governing claims of repeated sexual assault by correctional officers, Defendant determined that an argument that the reprehensibility prong is not met would be inappropriate." D.I. 226 at 3 n.1. But *State Farm*'s first guidepost calls on courts to assess *the degree* of reprehensibility. This is not a binary test that is either met or not met. Although all sexual assaults are reprehensible, there are degrees of sexual assault; and the assault in this case— fleeting, through clothing, unaccompanied by threats, and lacking in force sufficient to cause injury—is very much on the low end of the spectrum of sexual

consideration the second and third guideposts; but because this case involves a

nominal damages award, the analyses for these factors are the same, and under

Third Circuit precedent I am to rely principally on comparisons to punitive awards

in similar cases to determine if the jury's punitive award here was

unconstitutionally excessive.  *See Jester v. Hutt*, 937 F.3d 233, 242 (3d Cir. 2019).[5]

Of all the comparative cases cited by the parties, only two, *Cleveland v.

Curry*, 2014 WL 690846, at *1 (N.D. Cal. Feb. 21, 2014) and *Shepherd v. Fischer*,

2018 WL 3122053, at *2 (S.D.N.Y. June 26, 2018) involved sexual assaults

committed by correctional officers during clothed-body searches of inmates.  The

correctional officer's conduct in *Curry* was very similar to Kuschel's actions here.

The jury in *Curry* found the officer liable under the Eighth Amendment and § 1983

for "squeez[ing] and grabb[ing]" five inmates' genitals "in the course of

conducting clothed-body searches on them between 2006 and 2008."  2014 WL

---

assaults.  As noted, the jury explicitly rejected Drumgo's testimony that he was
injured by Kuschel's behavior.

[5] With respect to the second guidepost, "[t]he Supreme Court has . . . cautioned . . .
'that in practice, few awards exceeding a single-digit ratio between punitive and
compensatory damages, to a significant degree, will satisfy due process.'"  *CGB
Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 190, 192 (3d
Cir. 2007) (quoting *State Farm*, 538 U.S. at 425).  But "the single-digit ratio
analysis does not apply to punitive awards accompanying nominal damages
awards."  *Jester*, 937 F.3d at 242.  Rather, for nominal damages cases, the Third
Circuit has directed district courts to rely on "comparisons to punitive awards in
similar cases [to] help [them] assess the reasonableness of a punitive award [.]"  *Id.*

690846, at *1. The jury awarded $2,000 in compensatory damages to three of the inmates, $5,000 in compensatory damages to the fourth inmate, and $10,000 in compensatory damages to the fifth inmate. *Id.* It also awarded $5,000 in punitive damages to each inmate. *Id.* The Court rejected the defendant's constitutional challenge to the punitive awards, finding that "[t]here is no glaring disparity between the compensatory damages awarded here (between $2,000 and $10,000), and a punitive damages award of $5,000." *Id.* at *10.

The conduct of the two correctional officer defendants in *Shepherd* was more egregious than the officer's actions in *Curry* and Kuschel's actions here. For example, one of the officers in *Shepherd* "rammed" a metal wand between the plaintiff's "butt cheeks" while the other officer handcuffed the plaintiff and then "grabbed [his] testicles, and kept on squeezing [his] genital area for 30 to 50 seconds." 2018 WL 3122053, at *2–*3 (internal quotation marks omitted; alterations in the original). The defendants in *Shepherd* also threatened to anally rape the plaintiff and taunted him repeatedly. *Id.* at *3. The jury in *Shepherd* awarded the plaintiff one dollar in nominal damages and $20,000 in punitive damages. *Id.* at *1. In upholding the damages award, the court noted that the defendants' "conduct was violent in nature, involved a threat of serious sexual violence, and was accompanied by comments suggesting that [they] [were] acting maliciously." *Id.* at *7.

17

I was able to find one other case where a prison guard was found liable for sexually assaulting a fully clothed prisoner. In *Morton v. Johnson*, 2015 WL 4470104 (W.D. Va. July 21, 2015), the court entered a default judgment against a male prison guard accused by a female inmate of "touch[ing] her breast" and "rub[bing] down [her] stomach . . . to [her] private area" where he "felt [her] up" as he "hugged" her. *Id.* at *1. The court awarded the inmate $2,000 in compensatory damages and "$5,000 in punitive damages to punish [the defendant] for his reprehensible conduct and to deter other correctional officers from committing similar abuses against the individuals placed in their custody." *Id.* at *9.

Based on my review of these cases and the cases cited by both parties, I find that the jury's punitive award in this case was excessive and violated Kuschel's due process rights. The punitive damages award in *Shepherd*—$20,000—was 96% less than the punitive award in this case even though the officers' conduct in *Shepherd* was much more violent, threatening, and malicious than Kuschel's conduct. A $500,000 award under the circumstances of this case shocks the conscience and grossly exceeds what was required to serve the needs of deterrence and punishment. Leaving in place such an exorbitant award will also dissuade correctional officers from conducting searches they would otherwise perform and lead to the introduction of weapons and contraband into Delaware's prisons. It

18

will also deter competent professionals from seeking out correctional officer positions. All told, allowing a $500,000 punitive award to stand will result in increased security risks in an already dangerous environment.

In my view, $5,000—the same amount awarded in *Curry* and *Morton*—is an appropriate punitive award in this case. Kuschel's actions were on par with the defendants' conduct in those cases, and a $5,000 penalty is adequate to punish Kuschel for his actions and deter others from engaging in the type of conduct for which he was found liable. A $5,000 punitive award is also in line with punitive awards imposed against correctional officers for more egregious sexual assaults against inmates. *See, e.g., Lagarde v. Metz*, 2017 WL 457654, at *1–*2, *6 (M.D. La. Feb. 2, 2017) (awarding plaintiff inmate $1 in nominal damages and $1,000 in punitive damages where defendant demanded oral sex from the plaintiff, attempted to penetrate the plaintiff's anus with a broomstick, and threw the plaintiff to the ground); *Carrington v. Easley*, 2011 WL 2132850, at *1, *4–*5 (E.D.N.C. May 25, 2011) (awarding plaintiff $1 in nominal damages and $5,000 in punitive damages where defendant grabbed the plaintiff's penis and attempted to perform oral sex on him); *McKinley v. Trattles*, 732 F.2d 1320, 1322–23, 1327–28 (7th Cir. 1984) (affirming the jury's finding that two defendants conducted unconstitutional strip searches of plaintiff inmate, including by putting their fingers in plaintiff's anal cavity, but setting aside the jury's punitive damages award of $15,000 and

19

suggesting that the district court enter a punitive damages award of no more than

$6,000); *see also Oxendine-Bey v. Harihan*, 2015 WL 5331809, at *3–*4, *8–*9

(E.D.N.C. July 22, 2015) (awarding plaintiff inmate $5,000 in compensatory

damages and $5,000 in punitive damages where defendant, a prison medical

provider, sexually fondled an inmate multiple times during medical examinations),

*report and recommendation adopted*, 2015 WL 5330571 (E.D.N.C. Sept. 14,

2015).

Drumgo argues that "[c]ourts have upheld punitive damages awards over

six-figures where a correctional officer sexually assaulted an inmate." D.I. 224 at

13. But the assaults in the six cases he cites in support of this assertion are not

comparable to the assault in this case. In five of the cases, the defendant raped the

plaintiff. *See Doe v. United States*, 2018 WL 2431774, at *6 (D. Ariz. May 30,

2018) (noting that male prison guard defendant "repeatedly raped [female inmate

plaintiff] over several months"); *Etters v. Shanahan*, 2013 WL 787344, at *1–*3

(E.D.N.C. Feb. 6, 2013) (noting that male correctional officer defendant assaulted

female inmate plaintiff repeatedly, including "one incident in the laundry room

where [defendant] grabbed her by the hair, pulled her back into a conference room,

and had her perform oral sex," "another incident by a cleaning closet, [where] he

raped her vaginally and anally," and a third incident where he "handcuffed

[plaintiff] and, apparently after forcing her to have oral sex, was attempting to

anally rape her when he was interrupted by a bell indicating that another officer was coming"), *report and recommendation adopted*, 2013 WL 792834 (E.D.N.C. Mar. 4, 2013); *Ortiz v. Lasker, Jr.*, 2010 WL 3476017, at *1 (W.D.N.Y. Aug. 30, 2010) (noting that male defendant correctional officer attempted to rape female inmate plaintiff on one occasion and then, in second incident, "tore off some of her clothing and did have sexual intercourse with her" against her will on a table); *Cash v. County of Erie*, 2009 WL 3199558, at *1 (W.D.N.Y. Sept. 30, 2009) (noting that male prison guard defendant had sexual intercourse with female pretrial detainee plaintiff without her consent); *Hall v. Terrell*, 648 F. Supp. 2d 1229, 1231 (D. Colo. 2009) (noting that female inmate plaintiff was victim of defendant correctional officer's "ongoing sexual abuse and a brutal rape"). Moreover, in three of these cases the punitive damages awards were half of or less than half of the punitive award in this case. *See Doe v. United States*, 2018 WL 2431774, at *5 ($200,000 punitive award); *Etters*, 2013 WL 787344, at *1–*3 ($100,000 punitive award); *Ortiz*, 2010 WL 3476017, at *1 ($250,000 punitive award); *Cash*, 2009 WL 3199558, at *1 ($150,000 punitive award).

In the only nonrape case cited by Drumgo, the court awarded the plaintiff $350,000 in compensatory damages and $200,000 in punitive damages. *See Doe v. Green*, 2021 WL2188534, at *1–*2 (S.D.N.Y. Apr. 29, 2021), *report and recommendation adopted*, 2021 WL 2188148 (S.D.N.Y. May 28, 2021).  But even

though the punitive damages award in *Green* was less than half of what the jury awarded Drumgo, the conduct of the defendant in *Green* was much more reprehensible than Kuschel's fleeting groping of Drumgo's genitals during a clothed body search.  The defendant in *Green* sexually assaulted the plaintiff by "grabbing, pushing, . . . kissing, biting, and licking [her] upper body, including her exposed breasts; and putting his hand down [her] shorts and fondling her genitalia and groin . . . while trapping [her] against the wall with his body."  *Id.* at 2.

In sum, a $5,000 punitive damages award is consistent with *State Farm*'s "guideposts" and achieves an appropriate level of punishment and deterrence under the facts of this case.  Such an award constitutes significant financial punishment for a Delaware correctional officer.  *See* State of Delaware, Delaware Department of Correction, Recruiting, Correctional Officer Pay Scales FY 2022, https://doc.delaware.gov/assets/documents/FY22_U10_Payscales.pdf (last visited Aug. 23, 2022) (showing that annual salaries for the fiscal year 2022 for Delaware correctional officers range from $39,880 to $79,130).  And deterrence is not an issue for Kuschel, who is now retired.  Nor is it an issue for correctional officers in general at Vaughn.  On the contrary, Drumgo, Burroughs, and Lopez each testified that Kuschel was the only officer who ever groped them inappropriately during a frisk search, and Walker testified that he had never been groped by a correctional

officer during a search.   *See* Tr. 114:14–16 (Drumgo); 210:2–7 (Walker); 226:18–21 (Burroughs); 326:7–13 (Lopez).

## IV.   CONCLUSION

For the reasons stated above, I find that the admission of Burroughs's testimony was not erroneous but that the jury's punitive damages award of $500,000 is constitutionally excessive, manifestly unjust, and should be reduced to $5,000.  I will therefore deny Defendant's motion insofar as it seeks a new trial, grant the motion insofar as it seeks to amend the judgment, and reduce the punitive damages award to $5,000.

The Court will enter an Order consistent with this Memorandum Opinion.